**AXELROD et al. v. OSAGE OIL & REFIN-
ING CO. et al.**

**CONTINENTAL OIL CO. v. SAME.**

Circuit Court of Appeals, Eighth Circuit.
November 8, 1928.

Nos. 7970, 7971.

Symes, District Judge, dissenting.

Lloyd A. Rowland, of Bartlesville, Okl., and J. H. Maxey, of Tulsa, Okl. (James D. Talbott, of Bartlesville, Okl., and Leahy, Maxey & MacDonald, of Tulsa, Okl., on the brief), for appellants Axelrod and others.

Ray S. Fellows, of Tulsa, Okl. (Albert H. Bell, of Tulsa, Okl., on the brief), for appellant Continental Oil Co.

James E. Whitehead, of Dallas, Tex., for appellee Osage Oil & Refining Co.

Before KENYON, Circuit Judge, and SCOTT and SYMES, District Judges.

KENYON, Circuit Judge. As it is necessary in the discussion of the various questions involved in these two appeals to set forth rather fully the part of the facts in their particular relationship to the specific matters under discussion, we refrain, in order to minimize duplication, from any extended general statement of facts. It is sufficient to say that this case is one brought in equity by the Osage Oil & Refining Company (hereinafter designated the Osage Company) in the District Court of the United States for the Northern District of Oklahoma against Mamie Axelrod, Herman Axelrod, H. O. Dixon, J. R. Hoskins, Continental Oil Company (hereinafter designated the Continental Company), the Exchange National Bank of Tulsa, and First National Bank in Bartlesville, asking that said defendants be enjoined from claiming any rights in a certain leasehold of said Osage Company covering the southwest quarter of section 28, township 24 north, range 8 east, in Osage county, Oklahoma. The Continental Company filed a separate answer, claiming it had purchased a one-half interest in said lease from Mamie Axelrod for $50,000 in cash and $50,000 in oil to be produced, and had deposited the cash in the Exchange National Bank of Tulsa, Okl., to be delivered to her upon delivery of assignment and approval thereof by the Secretary of the Interior. Separate answer and cross-complaint were filed by Mamie Axelrod, Herman Axelrod, and H. O. Dixon, denying the claim of the Osage Company, and alleging that Mamie Axelrod was the owner of the lease in question by virtue of a sheriff's sale thereof in a mortgage foreclosure proceeding in the district court of Osage county, Oklahoma, in the case of Interstate Pipe Company against the Osage Company and one Whitehead.

The Exchange National Bank of Tulsa filed separate answer, alleging that it was holding the $50,000 in escrow, and that it had nothing to do with the lease and had no claims thereon. Defendant H. O. Dixon filed answer and cross-complaint against the Exchange National Bank, claiming he had an assignment of an interest in the escrow deposit. The Continental Company filed reply to the answer of the Exchange National Bank of Tulsa, and a cross-complaint as to said bank, asking that the $50,000 be paid into court to await its action.

The Exchange National Bank of Tulsa answered the cross-complaint of the Continental Company and asked that the First National Bank in Bartlesville, Okl., be made a defendant. This was done, and said bank filed answer to the cross-complaint of the Exchange National Bank of Tulsa, Okl., claiming it was entitled to $5,000 out of the $50,000 escrow deposit, and asked to have its rights protected.

The Osage Company filed a reply to the answer and cross-petition of Mamie Axelrod et al., denying her claim to a lease, and alleging that the judgment of the district court of Osage county and the sale by the sheriff of the lease were void, and had been so declared by the Supreme Court of Oklahoma,

and that she and those claiming under her had no right, title, or interest of any kind in the lease. It also filed reply to the answer of the Continental Company and admitted certain equities in favor of said company.

The trial court found generally in favor of the Osage Company and entered a general decree against Mamie Axelrod et al., and also decreed that the Continental Company should be compelled to accept an assignment of an interest in the lease upon the same terms as it had agreed to in its contract with Mamie Axelrod. Mamie Axelrod, Herman Axelrod, H. O. Dixon, and the First National Bank in Bartlesville appealed from the decree, which appeal is No. 7970, and the Continental Company appealed separately, which appeal is No. 7971. We deal with both appeals in this opinion.

The question of the jurisdiction of this court to consider these appeals first challenges our attention. Appellee Osage Oil & Refining Company moves to dismiss the appeal of Mamie Axelrod, Herman Axelrod, H. O. Dixon, and the First National Bank in Bartlesville, on a number of grounds, the principal ones being that the decree was a joint one against appellants and against the Continental Oil Company, J. R. Hoskins, and the Exchange National Bank of Tulsa; that it was taken without notice to J. R. Hoskins and the Exchange National Bank of Tulsa; and that no effective order of severance was granted either as to them or the Continental Oil Company.

In the petition for appeal it was set forth that the Continental Oil Company had been requested to join therein, had declined to do so, and a severance and allowance of a separate appeal was asked. This was granted, and hence the question upon this motion is narrowed to the relationship of Hoskins and the Exchange National Bank to the appeal. It is not clear whether the language of the court's order covered a severance as to Hoskins and the Exchange National Bank. However, as no such claim is made in appellants' brief, we lay that matter aside.

■ The general rule is settled by a long line of decisions in the federal courts that, where there is a joint judgment or decree, all judgment defendants must join in an appeal, unless the record shows there has been a severance or its equivalent. American Surety Co. of New York v. People of State of Colorado (C. C. A.) 22 F.(2d) 624, 625; Arkansas Anthracite Coal & Land Co. et al. v. Stokes, et al. (C. C. A.) 2 F.(2d) 511; Priest v. Seaman (C. C. A.) 266 F. 844. A situation, however, as to the facts, may be presented,

such as to take a case out of the general rule.

■ It seems to us that the main relief granted to complainant against Mamie Axelrod, Herman Axelrod, and H. O. Dixon is in no way joint with the relief granted as to Hoskins and the Exchange National Bank, and the rule as to joinder applies only to joint judgments. Be that as it may, however, it is certainly the law, and is not in conflict with the general rule we have referred to, that a mere nominal party, who has no substantial interest in the controversy is not a necessary party to an appeal. Only those whose rights may be substantially affected by the action of the appellate court are necessary parties.

In Dodson v. Fletcher (C. C. A.) 78 F. 214, 215, this court said: "All the parties to a suit or proceeding who appear from the record to have an interest in the order, judgment, or decree challenged in the appellate court must be given an opportunity to be heard there before that court will proceed to a decision upon the merits of the case." In Johnson v. Trust Co. of America (C. C. A.) 104 F. 174, 175, 176, this court said: "A summons and severance are not indispensable to the maintenance of an appeal by one of the parties to a decree, if it fairly appears from the record that the parties who might have joined have been notified to do so and have refused. * * * The rule is that all parties who appear to have an interest in the decree must be given an opportunity to be heard, before an appellate court will enter upon its consideration." In Babcock v. Norton et al. (C. C. A.) 5 F. (2d) 153, 155, the principle is stated as follows: "As an appellate court has no power to hear and determine a case unless all the parties substantially affected by the judgment or decree are brought before it, and inasmuch as in cases of a joint judgment or decree, summons and severance, or service of notification of appeal on necessary parties is essential to confer jurisdiction," etc.

From Simpkins Federal Practice (Rev. Ed. 1923) p. 978, we quote: "It may be stated, as a general rule, that all parties having an interest in the cause, and affected by the decree should join in the appeal, * * * but parties not affected by the decree need not join. * * * That parties having an interest in the decree must join in the appeal has been held to be jurisdictional, unless there has been a summons and severance, * * * but not when interest nominal, or not substantial." Higbee v. Chadwick (C. C. A.) 220 F. 873; Kidder v. Fidelity Ins. Trust & S. D. Co. (C. C. A.) 105 F. 821; Farmers'

Loan & Trust Co. v. Waterman, 106 U. S. 265, 269, 1 S. Ct. 131, 27 L. Ed. 115; Gilfillan v. McKee, 159 U: S. 303, 312, 16 S. Ct. 6, 40 L. Ed. 161; Winters v. United States, 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340.

■ The petition for appeal alleged that the Exchange National Bank of Tulsa had no substantial interest in the appeal. Said bank so stated in acceptance of service of copy thereof. The order granting the same stated: "The court finds that the defendants, J. R. Hoskins and Exchange National Bank have no substantial interest in the appeal, and that the petitioners are entitled to and are hereby granted a severance and separate appeal herein." In its answer in the case it pleaded that it was merely an escrow agent, and "has never at any time attempted to interfere with any person in the possession or operation of said leased premises, and claims no right, title or interest therein except as such escrow holder or agent." And in its answer to the cross-complaint of the Continental Oil Company is this prayer: "And that at such time as this court may direct, this answering defendant be authorized and permitted to deliver to this court, or into the hands of the clerk thereof, the sum of fifty thousand dollars ($50,000.00) and that upon such delivery of said sum into this court, or into the hands of the clerk thereof, this answering defendant be relieved and freed from all responsibility, liability, claim or demand of and to any and all of the parties to this suit. * * * "

Further, the parties entered into the following stipulation of record: "By stipulation of parties to the suit, it was agreed that there were no issues of fact affecting the Exchange National Bank of Tulsa, Okl., which admitted that it had on deposit the sum of $50,000, deposited with it by the Continental Oil Company, pursuant to a contract dated February 18, 1926, with Mamie Axelrod, and that such sum of money was still in possession of said bank, subject to the orders of the court." Nothing could be clearer than that the Exchange National Bank of Tulsa had no substantial interest in the controversy.

■ As to Hoskins the situation is but slightly different. While he was named as a defendant in the complaint, which asked that defendants be enjoined by final decree from further entering upon the leasehold estate, from attempting to take possession thereof, etc., scant reference is therein made to him. He filed no pleading of any kind to the bill of complaint; he made no claim to any interest in the property in suit; he offered no evidence, although he testified on behalf of complainant; he asked for no relief. He was not included in the injunction as to asserting right, title, equity or interest in the leased premises. The only adjudgment in the decree as to him was that he had no interest in the $50,000.00 deposited with the Exchange National Bank of Tulsa in escrow under the agreement between Mamie Axelrod and the Continental Oil Company. He entered no exception to the decree of the court. No judgment was entered against him as to costs.

Further, the petition for appeal alleged that Hoskins had no interest in the controversy, and the court so found. As far as this record shows he never claimed any interest in the Osage lease up to the time of filing the affidavit attached to appellee's motion to dismiss, in which he states he had an understanding or contract with the Axelrods that he was to have some interest in the lease.

■ The motion to dismiss must rest upon the record, and his affidavit now filed in this court is not a part of the original record and cannot be considered in support thereof. It conclusively appears from the record that he has no interest whatever in the controversy between the Axelrods and the Osage Oil & Refining Company. Therefore he was not a necessary party to the appeal.

The motion to dismiss the appeal of the Continental Company is based on somewhat similar grounds to the one to dismiss the Axelrod appeal. The first is as follows:

"(1) That no citation was sued out and served upon Mamie Axelrod, Herman Axelrod, H. O. Dixon, J. R. Hoskins, The First National Bank in Bartlesville, or Exchange National Bank of Tulsa, all of whom had a substantial interest in the controversy, and against whom a joint decree was entered, together with appellant."

This is not sustained by the record, which shows that citation was served on all of these parties, except the Exchange National Bank of Tulsa and Hoskins, whose relationship to the situation we have already discussed. Neither had any substantial interest in the appeal.

■ The second ground of the motion to dismiss was:

"II. That the decree entered in this case was a joint decree against appellant and against Mamie Axelrod, Herman Axelrod, H. O. Dixon, J. R. Hoskins, the First National Bank in Bartlesville, and the Exchange National Bank of Tulsa. That each and all of said parties appear from the record to have, and do have, a substantial interest in this controversy, yet the appeal herein is taken by

the Continental Oil Company alone, without notice to the others, and without any order of severance."

We have referred to the petition for appeal filed by Mamie Axelrod et al., stating that the Continental Oil Company had declined to join in the appeal, and that a severance and separate appeal was granted by the court. The Continental Oil Company, through its attorneys, acknowledged service of said petition.

In the petition for appeal on the part of the Continental Company reference is made to the order of severance entered in favor of Mamie Axelrod et al., and it is stated "that, a severance having already been allowed, this defendant is now entitled to its separate appeal." The court made a finding concerning this as follows: "The court further finds that on July 19, 1927, a severance on appeal was granted Mamie Axelrod et al., and pursuant thereto a separate appeal is hereby granted and allowed to the Continental Oil Company." Hence it is apparent that as a practical matter a separate appeal was allowed to the Continental Oil Company. All these matters arose in the same trial, and the severance of July 19th to Mamie Axelrod et al. cannot be ignored in its relationship to the severance claimed to be granted to the Continental Company. Evidently the intention of the court was to grant a severance as to both Mamie Axelrod and the Continental Company.

Removing all the chaff of technicality from this matter, it is evident that there is only one question involved in the appeal of the Continental Company, and that is its liability to purchase the lease in controversy from appellee. The decree of the court barred the Continental Company from any interest in the Osage lease, and quieted title as against Mamie Axelrod et al. None of the other defendants has any interest in the question as to whether the Continental Company must buy a half interest in the lease from the Osage Company. The decree in the controversy between the Continental Company and the Osage Company is not, in our judgment, joint as to the other defendants. The motions to dismiss the appeals are denied.

We consider first the questions arising in the appeal of Mamie Axelrod et al. (No. 7970):

Appellee, claiming to be the owner of a valid oil lease on certain land in Osage county, Oklahoma, brought this action against Mamie Axelrod and others, asking an injunction to prevent them from interfering with said leasehold estate. The answer of Mamie Axelrod and those claiming under her to this was that the Interstate Pipe Company, a corporation, held a promissory note of the Osage Oil & Refining Company, and a mortgage on the leasehold here in question to secure the same, J. E. Whitehead being surety on said note; that said Interstate Pipe Company commenced suit in the district court of Osage county, Oklahoma, asking a personal money judgment upon said promissory note, and seeking to foreclose the mortgage upon the oil lease; that in said proceedings judgment and decree was entered and said lease was offered for sale by the sheriff of Osage county upon an execution under order of the court, and was purchased by Mamie Axelrod; that the sheriff made to her an assignment of the lease, which was in due course approved by the Secretary of the Interior pursuant to regulations in force affecting the Osage Indian leases; that she took possession of the property and conducted drilling operations thereon, subsequently making a contract with the Continental Company to sell it a one-half interest therein, which was also approved by the Secretary of the Interior.

The reply to this on the part of the Osage Company is that the action in the district court of Osage county by the Interstate Pipe Company, a corporation foreign to Oklahoma, was a special proceeding under certain sections of the Oklahoma statutes authorizing suits against foreign corporations and providing the method of serving process; that proceedings under these special statutes constituted the court one of limited jurisdiction, which jurisdiction must appear affirmatively of record; that the service of process was made upon the secretary of state of Oklahoma, and no summons was ever served personally upon the Osage Company, also a foreign corporation, or Whitehead; that special appearance motion was filed by the Osage Company to quash the summons and service on various grounds, to wit, that it was not in legal form, was not served according to the command of the state statute, and that the service upon the secretary of state was in violation of the Fourteenth Amendment to the Constitution of the United States, in that it did not amount to due process of law; that this motion to quash was overruled by the state district court November 5, 1923, and exceptions to such ruling preserved; that a demurrer was filed by the Osage Company, raising the same question (we do not find this in the record, although it was in the record in the Supreme Court of Oklahoma);

that after the motion to quash was overruled answer was filed by the Osage Company and its codefendant, which again protested the jurisdiction of the district court of Osage county; that personal judgment and decree of foreclosure was entered July 8, 1924, without the knowledge of the Osage Company, and it did not discover the same until after the term of court had adjourned and the property covered by the mortgage was about to be sold upon execution; that the Osage Company then filed a petition in said cause, asking that the judgment rendered in its absence be vacated; that this petition was heard by the court and denied; that the Osage Company also filed written protest against the confirmation of the sale to Mamie Axelrod, which protest was heard by said state district court and denied, and the sale was approved and the sheriff directed to execute proper assignment to Mamie Axelrod; that from these orders the Osage Company appealed to the Supreme Court of Oklahoma, the notice of appeal being given in open court as provided by the Oklahoma statutes; that Mamie Axelrod paid the money under the sale by the sheriff, and accepted assignment from him thereof after the notice of appeal was given; that on November 9, 1926, the Supreme Court of Oklahoma reversed the decree of the trial court, and held that said court had committed reversible error "in denying the petition of defendants to vacate said void judgment, and in entering its order, over the objections of defendants, confirming the sale made thereunder, and in rendering its judgment of March 4, 1925, based upon such erroneous orders" (Osage Oil & Refining Co. v. Interstate Pipe Co., 124 Okl. 7, 12, 253 P. 71); that it directed the district court to enter the proper orders vacating these judgments of March 4, 1925, and July 8, 1924, and said orders were duly entered by said court, and the sheriff's deed made to Mamie Axelrod recalled and canceled; that by this action of the district court in canceling the assignment of the lease to her she is forever precluded and judicially barred from claiming anything thereunder.

The position of Mamie Axelrod et al. as to this contention is that she was not a party to the appeal from the judgment and decree of the district court of Osage county, and further that the appeal was ineffective because no case-made was served upon her and there was no motion for a new trial, and that it is the duty of this court to pass on the question of the jurisdiction of the Supreme Court of Oklahoma in the matter.

The following important admission appears in the brief of appellant: "Perhaps it may shorten this discussion if we now admit that the questions which we are to present to the Circuit Court of Appeals were urged and presented to the Oklahoma Supreme Court, not on behalf of Mamie Axelrod, but on behalf of Interstate Pipe Company." To this we hereafter advert.

The trial court held that Mamie Axelrod was a party to the appellate proceedings in the Supreme Court in the case referred to, and that she was bound and precluded by the judgment therein rendered, and also by the subsequent judgment of the district court rendered February 24, 1927, recalling and canceling the sale of said lease, and that these judgments are res adjudicata upon all questions presented in this action as to Mamie Axelrod, Herman Axelrod and H. O. Dixon.

It is unquestionably the law that Mamie Axelrod by her purchase at foreclosure sale became a party to the district court proceeding. Smith v. Noble Bros. et al., 54 Okl. 505, 153 P. 1150; American Glass Casket Co. v. Sledge, 114 Okl. 125, 244 P. 413; Taylor et al. v. Logan Trust Co. et al. (C. C. A.) 289 F. 51; Kneeland v. American Loan Co., 136 U. S. 89, 95, 10 S. Ct. 950, 34 L. Ed. 379; Davis v. Mercantile Trust Co., 152 U. S. 590, 14 S. Ct. 693, 38 L. Ed. 563.

Section 782 of the Compiled Laws of Oklahoma of 1921 provides how appeals may be taken, and, referring to the giving in open court of notice at the time judgment is rendered or within 10 days thereafter by the party desiring to appeal, states:

"Upon the giving of such notice and entering the same on trial docket, all parties of record in the court from which such appeal is to be taken shall become parties to the appeal in the Supreme Court, and no further notice shall be required to be served upon them of such appeal, and no appeal shall be dismissed by the appellate courts of this state because any party in the court below is not made a party to the appeal but such notice above provided and showing intention to appeal shall automatically make all parties of record in lower court parties in the appellate court."

By this statute, if Mamie Axelrod was a party of record in the district court, automatically, by the notice of appeal given in open court, she became a party to the appeal in the Supreme Court, although not specifically mentioned in the petition in error. Strawn v. Brady, 84 Okl. 66, 202 P. 505; Oklahoma N. M. P. Ry. Co. v. H. M. S. Drilling Co., 100 Okl. 260, 229 P. 420; In re Wah-Shah-She-Me-Tsa-He's Estate,

111 Okl. 177, 239 P. 177; American Glass Casket Co. v. Sledge, 114 Okl. 125, 244 P. 413. Counsel for appellants contend in their reply brief that while Mamie Axelrod became a party to the proceedings in the trial court by purchasing the lease at sheriff's sale, she was not a party *of record*, and therefore the notice of appeal did not automatically make her a party in the Supreme Court to the appeal. This distinction is too refined and hypertechnical to be accepted. In American Glass Casket Co. v. Sledge, supra, a case cited by both parties, the Supreme Court of Oklahoma says, referring to purchasers at a sheriff's sale: "The purchasers became parties *to the record* and proceedings upon their purchase of the property, and section 782, C. O. S. 1921, automatically makes them parties to the appeal." (Italics ours.) It is clear that Mamie Axelrod was a party of record in the trial court in the proceedings to vacate the judgment against the Osage Company. She was therefore a party to the appeal.

It is urged that the appeal was ineffective for the reasons (1) that no case-made was served on Mamie Axelrod; (2) that no motion for new trial was filed by appellee in the state district court. These exact questions were presented in behalf of the Interstate Pipe Company, by the same counsel who are now counsel for Mamie Axelrod, to the Supreme Court of Oklahoma, not only by the motion to dismiss the appeal, but also on a petition for rehearing, which was overruled by the said court, and again it was attempted to present them the third time by a second petition for rehearing, which was denied by the Supreme Court, so there are practically three holdings of that court relative to these questions. There inheres in these decisions of the Supreme Court a holding that Mamie Axelrod was a party to the appeal, and either that a case-made was served on her by service on her attorneys, it being admitted of record that no case-made was served personally on her, or that the circumstances were such as not to require the service of a case-made.

The grounds upon which the Supreme Court overruled the motion to dismiss and refused to grant a rehearing do not appear. Its reasons can only be surmised. The attorneys for Mamie Axelrod in the present controversy were attorneys of record for the Interstate Pipe Company in the Supreme Court proceedings. Case-made was served upon them August 27, 1925. The petition in error was filed in the Oklahoma Supreme Court September 4, 1925. The sheriff's sale was confirmed March 4, 1925. The Secretary of the Interior's approval of assignment was given March 19, 1925. One of the counsel for Mamie Axelrod testified that after the assignment was made by the sheriff to her his firm was employed by her to present the assignment to the Osage Indian Agency and the Secretary of the Interior for approval; that they represented her in the proceeding filed by the Osage Company in the federal court seeking to prevent the approval of the assignment, and that after the appeal from the Osage county district court was concluded in the Supreme Court their firm again represented her, but that they did not represent her in the appellate proceedings in the Supreme Court. The case-made was served upon them five months after they had been employed by Mamie Axelrod to secure the approval by the Secretary of the Interior of the assignment of the lease to her by the sheriff of Osage county.

The Supreme Court may have concluded that the present attorneys were in fact attorneys for Mamie Axelrod at the time of serving the case-made, and that the service upon them was a legal and sufficient service thereof. Tyler v. Roberts, 56 Okl. 610, 156 P. 201, is not exactly in point, as there was no question there as to the attorneys being of record for both parties, yet it bears somewhat upon the situation here presented. The Supreme Court could have held, on the other hand, that Mamie Axelrod not being present in person at the hearing on the confirmation of the sale, and not participating in the proceedings, and not in fact personally appearing at the trial, no case-made as to her was necessary. Section 782, Comp. Laws of Okl. 1921, provides:

"It shall not be necessary for the party appealing, to serve the case-made for such appeal on any party to the action who did not appear at the trial and take part in the proceedings from which the appeal is taken, or who shall have filed a disclaimer in the trial court; nor shall it be necessary to make any such person a party to the petition in error: Provided, that any party so omitted from the proceedings in error, who was a party to the action in the trial court, may be made a party plaintiff or defendant in the action in the supreme court upon such terms as the court may direct, upon its appearing that he might be affected by the reversal of the judgment or order from which the appeal was taken, with the right to be heard therein the same as other parties."

720

See Cameron v. Cameron et al., 90 Okl. 293, 217 P. 1033; American Glass Casket Co. v. Sledge, 114 Okl. 125, 244 P. 413.

■ As to the appeal being ineffective because no motion for new trial was filed, the decisions of the Oklahoma Supreme Court are not entirely clear on that question. One view of the matter is presented in Ingram v. Ingram, 122 Okl. 59, 60, 250 P. 795, 796: "On the authority of the case of Smith v. Smith, in an opinion filed in this court May 20, 1924 (102 Okl. 70, 226 P. 368), wherein it is held that where a petition is filed seeking to vacate a judgment on account of fraud practiced by the successful party in obtaining a judgment, and an answer is filed denying the allegations of the petition and issues joined and the same is tried to the court on evidence introduced, this is in the nature of an independent action, and in order that this court may obtain jurisdiction to review the judgment of the trial court a motion for new trial is necessary and the same must be incorporated, together with the action of the trial court thereon, in the case-made attached to the petition in error, and where no motion for a new trial is filed, as in the instant case, a motion to dismiss the appeal should be sustained."

In Harper et al. v. Rutland Sav. Bank, 79 Okl. 274, 276, 192 P. 1101, 1102: "The trial is conducted, as any other action of an equitable nature, and, in order to have the errors occurring during the progress of the trial or the evidence reviewed by this court, a motion for a new trial must be filed and such motion and the ruling of the trial court thereon preserved by being incorporated in the case-made." See, also, In re Foley, 78 Okl. 58, 188 P. 885; Smith v. Smith, 102 Okl. 70, 226 P. 368, 369. We think the reference in Ingram v. Ingram, supra, to a review of the evidence strikes the true differential note in the Oklahoma cases. If a review of facts is sought in the appellate court there must be a motion for new trial, but not if review of law questions only is involved.

In Tribal Development Co. et al. v. White Bros. et al., 28 Okl. 525, 114 P. 736 (syllabus) it is said: "Under the uniform ruling in this jurisdiction, the record proper is made up of the petition, the process, return, pleadings subsequent thereto, reports, verdicts, orders, and judgments, and an error appearing upon the face thereof may be raised for the first time in this court on a transcript thereof accompanied by a petition in error duly presenting the same." From the opinion we quote: "A party may, however,

be aggrieved by both the findings of fact and also the conclusions of law drawn therefrom. Therefore, to avail himself of the error which he claims exists in the first, he must within due time file his motion for a new trial. If he neglects to do this, or, which is the same thing so far as the appeal in this court is concerned, neglects to have the same preserved, he does not thereby waive his right to challenge the correctness of the legal conclusion to which the court arrives on its consideration of the unchallenged facts found, and this may be done without a motion for a new trial, and even without an exception; for, when the case is duly brought to this court on a transcript of the record, the error is then one appearing on the face of the record proper, and this court may review the same upon a proper assignment contained in the petition in error. Baker v. Hammett et al., 23 Okl. 480, 100 Pac. 1114, and cases therein cited."

In Ritchie v. Kansas, N. & D. Ry. Co., 55 Kan. 36, 48, 39 P. 718, 721, the court said: "When an issue of law has been tried and determined by the court, a motion for a new trial is not required as a condition precedent to the right of the party to have the decision of the court reviewed on petition in error." Territory v. Caffrey, 8 Okl. 193, 57 P. 204; Tacha v. Railway Co., 97 Kan. 571, 155 P. 922.

By the failure to file motion for new trial the Osage Company did not waive its right to have the Supreme Court consider the correctness of the legal conclusions arrived at by the trial court upon the facts, the case being taken to the Supreme Court upon transcript of the record, as well as upon a case-made. Upon suggestion of diminution of the record the fact as to the transcript was supplied. Section 783, Comp. Laws 1921, Oklahoma Statutes, provides: "In all actions hereafter instituted by petition in error in the supreme or other appellate court the plaintiff in error shall attach to and file with the petition in error the original case-made, filed in the court below, or a certified transcript of the record of said court. * * *" The questions presented to the Supreme Court were triable upon transcript or case-made.

■ In passing on the motion to dismiss the appeal and the petitions for rehearing the Supreme Court of Oklahoma must have construed the various statutes of that state relating to the appeal, the jurisdiction of the Supreme Court, and the method of invoking that jurisdiction, including the necessity of a case-made or motion for new trial. It would

seem unquestioned that we are bound by the construction of the Supreme Court of Oklahoma of its laws relative to its own appellate jurisdiction. As said in John v. Paullin, 231 U. S. 583, 585, 34 S. Ct. 178, 58 L. Ed. 381: "Without any doubt it rests with each state to prescribe the jurisdiction of its appellate courts, the mode and time of invoking that jurisdiction, and the rules of practice to be applied in its exercise; and the state law and practice in this regard are no less applicable when Federal rights are in controversy than when the case turns entirely upon questions of local or general law. * * * The mode of subjecting the judgments of the state's subordinate courts to review in its Supreme Court was a matter of local concern only and not within the control of Congress." State of Missouri ex rel. Hurwitz v. Emmitt P. North et al., 271 U. S. 40, 46 S. Ct. 384, 70 L. Ed. 818; West v. Louisiana, 194 U. S. 258, 24 S. Ct. 650, 48 L. Ed. 965.

██ The decision of the Supreme Court of Oklahoma must, we think, be held to be an adjudication of the regularity of the proceedings and the observance of the statutory requirements, and that Mamie Axelrod was legally a party to the appeal and bound thereby. The judgment of the Supreme Court of Oklahoma was conclusive and is not open to the collateral attack now made upon it. Neither the trial court nor this court is a court of review of the decisions of the Supreme Court of Oklahoma.

██ However, if she was not a party to that appeal, what is to be said as to the order of the district court of Osage county on the mandate entered February 24, 1927, setting aside and vacating the sheriff's sale of the lease and estate in controversy and directing Mamie Axelrod, a party to the proceeding, to return the sheriff's deed to that court and deliver the same for cancellation, and of the judgment of that court that she acquired no right, title or interest in and to said lease or said leasehold estate by reason of her purchase at said sheriff's sale. She was a party to the district court action, even if she was not a party to the appeal. When the cause was returned to the state court, that court proceeded as directed by the mandate. Whether right or wrong, it entered a sweeping decree, vacating all judgments and orders to which we have referred. This was a final and appealable order. It must be assumed that the court did not act without giving the parties to the proceedings an opportunity to present their theories of the situation. No exception was taken to the en-

try of the order of the Osage county district court and no appeal was prosecuted therefrom. We see no reason why she was not precluded by this order and judgment, and therefore it makes little difference whether or not she was a party to the appellate proceeding.

Being satisfied that Mamie Axelrod is bound by the judgment of the Supreme Court of Oklahoma and the order of the district court of Osage county in setting aside the sale to her under the foreclosure proceedings we should probably pause here in considering this branch of the case. The very interesting field of whether as an independent proposition she acquired title to the leasehold is inviting, but we enter it only slightly. Were we to undertake a discussion of that question the same situation would confront us as before presented, viz. that the state statutes necessary to be considered in its determination have been construed by the Supreme Court of Oklahoma. In Edward Hines Yellow Pine Trustees v. Anna F. C. Martin et al., 268 U. S. 458, 462, and 463, 45 S. Ct. 543, 545 (69 L. Ed. 1050), the court said: "Both the meaning of statutes of a state and the rules of the unwritten law of a state affecting property within the state are peculiarly questions of local law to be ascertained and established by the state courts. For that reason federal courts ordinarily hold themselves bound by the interpretation of state statutes by the state courts."

Every question now presented to this court was before the Supreme Court of Oklahoma (stipulation, supra). That court construed sections 5433, 5436, 5441, 5442, and 5443, Compiled Laws Oklahoma 1921, which are the special statutes under which it is claimed jurisdiction was secured of the foreign corporation, and held there was no jurisdiction conferred by them on the district court to render the judgment it did; that the judgment was void on the face of the record. As special reliance as a basis of jurisdiction now seems to be placed by appellant upon section 5442, which is as follows:

"Corporation's Noncompliance with Law —Venue—Process. Any foreign corporation, doing business in the State of Oklahoma, having failed either to appoint an agent upon whom service of summons or other process may be had, or failed to file in the office of the Secretary of State a duly authenticated copy of its articles of incorporation or charter, or having failed to pay the license fee as required by law, then in the event of said foreign corporation having

failed to comply with any of the provisions of the law as above referred to, any person now or hereafter having any cause of action against any foreign corporation may file suit against said foreign corporation in any county in the state and service of summons or any process upon the Secretary of State shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject-matter," —reference might well be made to a recent decision of the Supreme Court of the United States filed February 20, 1928, James W. Wuchter v. Michael Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, in which, referring to a somewhat similar statute that court said:

"But the enforced acceptance of the service of process on a state officer by the defendant would not be fair or due process unless such officer or the plaintiff is required to mail the notice to the defendant, or to advise him, by some written communication, so as to make it reasonably probable that he will receive actual notice. Otherwise, where the service of summons is limited to a service of the secretary of state or some officer of the state, without more, it will be entirely possible for a person injured to sue any nonresident he chooses, and through service upon the state official obtain a default judgment against a non-resident who has never been in the state, who had nothing to do with the accident, or whose automobile having been in the state has never injured anybody. A provision of law for service that leaves open such a clear opportunity for the commission of fraud (Heinemann v. Pier, 110 Wis. 185, 85 N. W. 646), or injustice is not a reasonable provision, and in the case supposed would certainly be depriving a defendant of his property without due process of law." And referring to other decisions said: "These cases and others indicate a general trend of authority toward sustaining the validity of service of process, if the statutory provisions in themselves indicate that there is reasonable probability that if the statutes are complied with, the defendant will receive actual notice, and that is the principle that we think should apply here."

The Supreme Court held that inasmuch as the statute of New Jersey under consideration did not make provision for communication to the proposed defendant "such as to create reasonable probability that he would be made aware of the bringing of the suit," it does not constitute due process. It would seem difficult to harmonize the constitutionality of section 5442 with this decision. However, it is unnecessary for us to pass on that question.

Much is said in the briefs of appellant as to the filing of answer by the Osage Company and of petition to set aside the order and judgment in the district court of Osage county amounting to a general appearance of said Osage Company in that suit. This question seems to have received little attention from the Oklahoma Supreme Court in its decision in the Interstate Pipe Company Case. It is the settled law of Oklahoma that a party seeking to vacate a judgment upon nonjurisdictional as well as jurisdictional grounds enters a general appearance. In Webster v. Crump, 117 Okl. 244, 245, 246 P. 423, 424, the court said: "It is the settled rule in this state that, where a defendant denies the jurisdiction of the court over his person, he may, by special appearance, first present that single question; but, where he joins with the jurisdictional question other questions involving the merits of the action, and asks for affirmative relief, he thereby waives all defects in the summons and the service of the summons, and enters a general appearance." Ziska v. Avey, 36 Okl. 405, 122 P. 722.

Section 810, Oklahoma Statutes, sets forth a number of grounds upon which a petition to vacate a judgment may be based. The third division is irregularity in obtaining the same. The fourth refers to fraud. The Oklahoma courts have held that a party cannot seek a vacation of judgment for causes enumerated in subdivision 4 of section 810 without subjecting himself to the jurisdiction of the court. Myers v. Chamness, 102 Okl. 131, 228 P. 990.

We have referred to Webster v. Crump, supra, where it is indicated that a party can by special appearance present a challenge to the jurisdiction of the court without waiving defects in the summons. In the leading case of Harkness v. Hyde, 98 U. S. 476, 479 (25 L. Ed. 237), it is said: "Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when being urged it is overruled, and the defendant is thereby compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived."

The Oklahoma decisions are not out of line with this decision, as they hold that an appearance in the first instance upon both

jurisdictional and nonjurisdictional grounds is a general appearance and waives defects in the service.

In the district court of Osage county the appearance of the Osage Company in the first instance was a motion to quash the summons, and in filing the answer, which asked no affirmative relief, except as to Whitehead, the challenge to the jurisdiction was insisted upon. This question was recently considered by the Supreme Court in the case of Richardson Machinery Co. v. Scott, Administratrix, filed February 20, 1928, 276 U. S. 128, 48 S. Ct. 264, 72 L. Ed. 497. The court there considers the Oklahoma decisions. There was a motion to quash summons and set aside judgment under section 810 of the Compiled Statutes of 1921, and a pleading entitled "Petition to Vacate Judgment" was filed. That petition did not contain an allegation that the corporation's appearance was special and solely to contest the jurisdiction of the court; nor did it seek to quash the summons issued and served, and it asked affirmative relief. It is undoubtedly, as referred to in that case, the settled law of Oklahoma "that, where a person against whom a judgment is rendered files a petition to vacate the judgment upon the ground that the court had no jurisdiction of the defendant, and the petition is based also on non-jurisdictional grounds, such as those mentioned in subparagraphs fourth and seventh of section 810, the filing of the petition operates as a voluntary general appearance, with the same effect as if such appearance had been made at the trial."

The situation here is quite different. Appearance is largely a question of intention, although there may be a legal appearance in a case without the intention so to do existing. In the action in the state court the Osage Company filed a special appearance motion to quash summons and service, which was overruled. It filed an amended motion to quash summons and service, which was overruled. A rehearing was requested upon the same, which was granted, and the motions were again denied. It is claimed that general and special demurrers were then filed, stating that the facts alleged in the petition did not entitle plaintiff to recover in that court a personal judgment against it, which demurrers also seem to have been overruled, although the record is not complete on this question. The Osage Company then filed answer, and the first paragraph of that answer is as follows: "That this court has no jurisdiction over the persons of these defendants, and this answer is filed under protest and without submitting to the jurisdiction of this court." It would seem as clear as anything

could be that the pleader was standing upon the jurisdictional question, and that there was no intention to waive it; that the Osage Company was appearing, if at all, to question the jurisdiction; and that all its allegations were of a defensive nature.

The only affirmative relief asked in the answer was in section 5 thereof, which is as follows:

"V. That the defendant J. E. Whitehead joined in this answer with the defendant the Osage Oil & Refining Company, but further pleads that he is a surety only, upon the said note and that in the event judgment is rendered against him in this action that he have judgment over and against his codefendant, the Osage Oil & Refining Company, for a like amount, and that he be subrogated to all the security held by his codefendant, the Osage Oil & Refining Company."

On the part of Whitehead this paragraph asks certain relief as against the Osage Company. It is no part of the answer of that company, and certainly cannot be construed as a plea of the Osage Company for relief. This is a very different situation from that presented in the Richardson-Scott Case, supra. The Osage Company challenged the jurisdiction of the court in the first instance by the motion to quash summons. It continued challenging jurisdiction at every step in the proceedings. This court said in Grable et al. v. Killits (C. C. A.) 282 F. 185, 195: "If our conclusion as to the effect of the first motion is correct, clearly the subsequent motions to dismiss and the answer upon the merits did not amount to a general appearance. After defendants had done all they could to avoid personal jurisdiction, they were at liberty to present meritorious defenses, and without losing the benefit of the formal motions, so long as they persisted in their protests against personal jurisdiction." This doctrine seems to fit this case.

In view of our conclusion as to the effect of the judgment of the Supreme Court of Oklahoma, and also the subsequent judgment of the district court of Osage county, upon the alleged rights of Mamie Axelrod, we have extended this discussion further than necessary, until it bids fair to rival in prolixity some of the briefs filed. The interesting nature of the questions and the earnestness and ability with which they have been presented is our excuse for so doing. Other points are suggested and argued at length, which we see no need of considering. We are satisfied the conclusions of the trial court as to appellant, Mamie Axelrod, and those claiming under her, were not erroneous.

The controversy between the Continental

Company and the Osage Company, presented in appeal No. 7971, is distinct from the one between the Osage Company and Mamie Axelrod et al. From the decree of the court we quote:

"And the plaintiff, the Osage Oil & Refining Company now demands that the defendant, the Continental Oil Company, be held to its agreements and to its offer made in the pleadings in this action, and the court finds that the defendant the Continental Oil Company is entitled to receive the assignment of plaintiff's said lease upon the terms, stipulations, and conditions set forth in its contract made with the defendant Mamie Axelrod, and that, by reason of the agreements and understandings had between the plaintiff and the said defendant the Continental Oil Company, and by reason of the pleadings of the said defendant the Continental Oil Company, filed in this action, that it should be compelled to accept the said assignment from the plaintiff. The court further finds that plaintiff's said property has been drained by offset wells upon the property of the Continental Oil Company for more than 12 months, and that by reason of this litigation and by reason of the Continental Oil Company contracting to purchase the said lease from the plaintiff, Mamie Axelrod, that it should not now be permitted to decline to accept the said lease from the plaintiff upon the same identical terms after draining the property for more than 12 months by the three offset wells."

The court finds, therefore, as a question of fact, that certain agreements and understandings existed between the Osage Company and the Continental Company, and decrees that by virtue thereof and the pleadings the latter should be compelled to accept an assignment of a one-half interest in the Osage Company's lease similar to the assignment made by Mamie Axelrod when she was supposed to own the same.

The findings of the trial court on questions of fact are presumptively correct, and will generally be accepted by the appellate court, unless clearly against the weight of the evidence. Benedict et al. v. Setters et al. (C. C. A.) 261 F. 492; Kansas City Southern Ry. Co. et al. v. May et al. (C. C. A.) 2 F.(2d) 680; United States v. Mammoth Oil Co. (C. C. A.) 14 F.(2d) 705; Lion Oil Refining Co. v. Albritton (C. C. A.) 21 F.(2d) 280; Majestic Co. v. Orpheum Circuit (C. C. A.) 21 F.(2d) 720.

The Continental Company contends that there is no evidence in the record to show any contract oral or written entered into be-

tween it and the Osage Company relative to its acquisition of any interest in the Osage lease; that there is no basis therefore for compelling it to purchase from the Osage Company an interest in said lease according to the terms of the Axelrod contract; that while it offered to purchase from either party in April, 1926, such offer should not now be enforced, as the lease has diminished in value, due to the drainage thereof and to the lessened price of oil.

Appellee's position is that the Continental Company offered to extend the provisions of the Axelrod contract to it when its answer was filed in the Western district of Oklahoma in the case there brought by the Osage Company in April, 1926; that it accepted said offer, but that Mamie Axelrod refused to accept it; that the Continental Company should then have taken possession of and operated the property; that it did not attempt so to do, but never withdrew the offer; that after the judgment of the Supreme Court holding that Mamie Axelrod had no interest in this property the Continental made no attempt to end the matter, but entered into negotiations with the Osage Company whereby the present suit should be brought for the benefit of both companies, and that ways and means were agreed upon so to do; that the Continental Company wanted the lease from anybody who could deliver valid title; that after the complaint was filed in this action the Continental Company filed its answer, stating that it had gone to great expense in developing the field; that the property was being drained, and asking in the prayer of its answer the very relief that the court allowed; that it is bound by its pleading; that at the trial the Osage Company tendered to the Continental Company assignments of an interest in the leasehold substantially the same as were provided in the Mamie Axelrod contract; that the Continental Company is estopped by its contractual relations, by its offer made in the Western district injunction case, by its answer filed in that case, by its conduct in participating in a mutual equity suit from which it has received benefits, and by its answer in the present case electing to pursue the lease and adopting that theory of the controversy; that it is bound by its election and cannot now question its own pleadings and take an inconsistent position from the prayer of its answer confessed by the reply of the Osage Company.

The decree of the trial court subrogated the Osage Company to the rights of Mamie Axelrod in her contract assigning an interest in the lease to the Continental Company.

There is no question that the Continental Company greatly desired to purchase an interest in the lease here involved. It had title to an adjoining lease and had drilled an offset well to the west line of the Osage lease, which was brought in in April, 1926, and had an initial production of some 1,500 barrels of oil per day. Having ascertained from the records that Mamie Axelrod had purchased the lease at sheriff's sale, it entered into a written contract with her February 18, 1926, by which she agreed to sell to it a one-half interest in the same for $50,000, which was to be deposited in the Exchange National Bank of Tulsa pending the approval of the sheriff's assignment by the Secretary of the Interior; and a further sum of $50,000 was to be paid out of oil as produced from the Continental Company's one-half of the property; also a test well was to be sunk by the Continental Company. It was not long after this contract that notice was served by the Osage Company on the Continental Company that it owned the lease; that it had appealed to the Supreme Court of Oklahoma from the decree of the district court of Osage county, Oklahoma, in the suit of Interstate Pipe Company v. Osage Company. The Continental Company thereupon directed the Exchange National Bank not to pay the $50,000 deposited there to Mamie Axelrod, and the same was held by that bank at the time of the trial. There were three wells on the adjoining Continental Company lease, partly developed before the time of the Axelrod contract, and at the time of the trial the evidence shows they were producing about one-eighth of the amount one of them was producing at the date of said contract, and the price of oil was reduced nearly one-half. The Osage Company also filed protest with the Secretary of the Interior against the approval of the assignment made by Mamie Axelrod to the Continental Company.

In April, 1926, the Osage Company filed a bill in equity in the United States District Court for the Western District of Oklahoma, seeking to enjoin Mamie Axelrod and the Continental Company from recording transfers of the lease. The Continental Company filed an answer in that case, in which it set forth that the lands covered by the lease were being drained by offset wells; that it was ready, willing, and able to enter upon the lands and drill a well as soon as it could receive valid title; and this provision is contained in that answer:

"This defendant now offers at any time to enter upon the above lands and to commence said well, subject to delivery to it of the approved assignments aforesaid, and subject with consent of the parties to this suit to proper order of this court and to proper order being given and entered in the case now pending in the Supreme Court of the state of Oklahoma, representing the appeal of the complainant herein from the district court of Osage county, Oklahoma, as aforesaid, and to drill and complete said well upon the terms and in the manner and upon the conditions as set forth in said contract, and subject to proper order of this court and of the Supreme Court of Oklahoma in the case above referred to, and subject to proper agreement between the parties hereto. This defendant agrees that the Exchange Trust Company might be directed to pay the escrow sum of fifty thousand dollars ($50,000.00) into this court, or that other order may be given to the Exchange Trust Company by this court regarding the disposal of said deposit either to Mamie Axelrod or to the complainant herein, whichever should be decreed by this court or by the Supreme Court of Oklahoma to be the valid owner of said lease, and hereby further offers to do and perform all other obligations imposed on this defendant by said contract—in order to immediately develop said lands for oil—provided that proper orders may be entered by this court and by the Supreme Court of Oklahoma protecting this defendant so that regardless of whether the complainant herein or the defendant, Mamie Axelrod, may finally be adjudged to be the owner of said lease, this defendant will in the meantime have proceeded in accordance with its contract in the development of said lands for oil and will thereby have protected the interests of either the complainant or the defendant, Mamie Axelrod, from loss by reason of drainage of oil from said lands."

This proposition was accepted by the Osage Company, but refused by counsel for Mamie Axelrod. It is to be observed that in the offer there made the Continental Company was willing to take the lease and perform the obligations of the Axelrod contract, but that it desired to immediately develop the lands for oil, and it was provided that its offer was subject to orders to be entered by that court and by the Supreme Court of Oklahoma protecting it from loss regardless of who was successful in the suit. Such orders were never secured, nor was any effort made to secure them, and as only one of the parties as to whom the offer applied accepted the same, the offer was ended. In any event the offer would not have endured beyond a reasonable time. We see no feature of estoppel in this, but it does throw some light

on what the Continental Company was willing to do. While there were some negotiations subsequent to this, the record does not disclose just what they were. The matter rather drifted awaiting the decision of the Supreme Court of Oklahoma in the appeal from the decree of the district court of Osage county.

In February, 1927, the decision of the Supreme Court of Oklahoma was rendered, reversing the action of the district court of Osage county, and holding that said court was without jurisdiction in the case of Interstate Pipe Company v. Osage Company, and Mamie Axelrod's claim to the lease was in effect canceled and wiped out. Mr. Whitehead, counsel for the Osage Company, then took up with Mr. Fellows, counsel for the Continental Company, the question of a new agreement. In the meantime Mr. Whitehead had discovered in conference with Mr. Talbott, one of the counsel for the Axelrods, that the Axelrods would not agree to release the money held by the Exchange Bank of Tulsa, for the reason that they claimed Mamie Axelrod was not a party to the appeal from the district court of Osage county, that she had merely sold to the Continental Company a one-half interest in a lawsuit, and that she became entitled to the money deposited in the bank as soon as the Secretary of the Interior approved the assignment, and that she intended to sue the bank for the $50,000 deposit. This he communicated to Mr. Fellows, counsel for the Continental Company.

It seems that some discussion ensued concerning the Axelrod contract in Mr. Fellows' office, and that Mr. Whitehead asked Mr. Fellows to draw up a draft of a contract between the Osage Company and the Continental Company. This he did, but omitted from the contract the provision of the Axelrod contract that the Continental Company was to drill one well at its expense. Mr. Whitehead then prepared a contract which was identical with the Axelrod contract, except that it provided that the $50,000 on deposit should be retained by the clerk of the court until the mortgage lien against the property was fully satisfied. This was forwarded to the officers of the Continental Company at Denver. It was disapproved by them. It appears, therefore, that the draft of the contract prepared by Fellows was not accepted by Whitehead, nor was the contract proposed by Whitehead accepted by the Continental Company. The matter seems to have been entirely one of negotiations. It is evident from the testimony of Whitehead, Fellows, and Lantz that an attempt was being made to ad-

just matters between the Continental Company and the Osage Company, and to enter into a new contract substantially the same as the Axelrod contract, with the exception that the Continental Company was seeking to secure a reduction in the amount to be paid for the leasehold.

It is obvious that up to a time shortly prior to commencing this suit no completed arrangement had been entered into between the Osage Company and the Continental Company with reference to the Continental taking from the Osage Company an interest in the leasehold similar to that provided in the Axelrod contract. Of course, it is not the business of courts to make contracts for parties. The minds of the parties must meet upon all the terms of a contract sought to be enforced. The exact act to be done must be clear. Ellis v. Treat (C. C. A.) 236 F. 120; Wichita Water Co. v. City of Wichita (C. C. A.) 280 F. 770, 36 Cyc. 789.

We pass to the second phase of this discussion, viz. the claimed agreements and understandings immediately prior to the bringing of this action and the pleadings of the Continental and Osage Companies in this case and the questions arising thereon. It is apparent that upon communication to Mr. Fellows by Mr. Whitehead at the time of their conference in February, 1927, of the claim of the Axelrods that they were entitled to the money in the Exchange Bank upon the approval of the assignment by the Secretary of the Interior, and the fact that the Continental would become involved in a lawsuit over this matter, and in view of numerous assignments made by Mamie Axelrod of interests in this money and in the lease, portending other lawsuits, that ways and means were discussed and some arrangement was made between Mr. Fellows, representing the Continental Company, and Mr. Whitehead, representing the Osage Company, as to the proper procedure to relieve both companies of the entanglements they were in on account of the position taken by the Axelrods, and the plan was devised of bringing the present suit and making every one interested in any way a party, so that the Continental Company in turn could in the general equity case have its rights determined as to the $50,000 deposited in the Exchange Bank of Tulsa.

We are not impressed with the claim that the suit was a vicarious one on the part of the Osage Company. It was in a situation where it had to bring suit to free itself from the claim of Mamie Axelrod that she was not a party to the appeal in the state court. This question could, of course, have been de-

termined in a suit brought by the Osage Company against the Axelrods without including the Continental Company as a party, and the Continental Company could have brought its own suit and then would have been faced with the Axelrod claim that it had merely bought a one-half interest in their lawsuit. Under these circumstances it was natural that some arrangement should be made, as Mr. Whitehead testifies there was, to bring this lawsuit "to get relief all the way around," and we are satisfied this suit was brought for the benefit of both companies, the Continental Company agreeing to appear without service, which it did, indicating the friendly nature of the suit, and corroborating the testimony of Mr. Whitehead somewhat as to certain understandings and arrangements entered into. The answer filed by the Continental Company we regard as the important and vital part of this controversy. We quote a part thereof:

"6. This defendant alleges that it is the owner of an Osage oil mining lease or leases covering adjoining lands; that it has been operating such lands for oil purposes since prior to the date of the aforesaid contract with Mamie Axelrod, and that in order that the above described lands might not be drained of oil by adjacent operations, this defendant has heretofore repeatedly endeavored to contract with the plaintiff herein and the said Mamie Axelrod whereby this defendant might acquire title to a one-half interest in the lease on the above lands and develop the same and allow the fifty thousand dollars ($50,000.00) cash payment to be held in trust or in escrow for the plaintiff or Mamie Axelrod, whichever party should be determined to be the legal owner of said lease. This defendant has failed in its endeavors to secure such agreement from the parties claiming said lease, and its payment of fifty thousand ($50,000.00) dollars has for more than a year past been on deposit in the Exchange National Bank of Tulsa, Okl., from which deposit this defendant or the other parties to this action have derived no benefit, and that this defendant has been kept out of possession of said lease and of the money deposited as aforesaid, and the value of said lease has greatly deteriorated since contract of purchase by reason of drainage of oil in wells on adjoining lands. This defendant by reason of the litigation between the plaintiff and the said Mamie Axelrod, and by reason of their failure jointly to consent that this defendant might develop and operate said lease, has suffered and is suffering irreparable damage."

The prayer was as follows:

"(1) That the plaintiff be denied any right, title or interest whatsoever in and to the Osage oil mining lease covering the southwest quarter (SW¼) of section 28, township 24 north, range 8 east, Osage county, Oklahoma, and that title to said lease be quieted, one-half (½) in Mamie Axelrod and one-half (½) in this defendant, pursuant to the provisions of the contract set out as Exhibit A; or,

"(2) That the aforesaid contract, being Exhibit A hereto attached, between this defendant and Mamie Axelrod be canceled upon the reassignment by this defendant of the interest in said lease heretofore conveyed to it, and the Exchange National Bank of Tulsa, Okl., be directed to return to this defendant the fifty thousand dollars ($50,000.00) deposited by this defendant, and the Continental Oil Company be relieved of any further liability of any kind whatsoever under the aforesaid contract; or,

"(3) That an order be entered herein directing said bank to pay said sum of fifty thousand dollars ($50,000.00) to the clerk of this court or to a receiver appointed by this court, to be held either for the plaintiff herein or for Mamie Axelrod, and that in the meantime this defendant be allowed to enter upon the above lease, and to commence operations thereon, and to require all the parties to this suit to execute such instruments as may vest in this defendant valid title to a one-half interest in the Osage oil-mining lease covering the above lands, and for such other and further relief as to this court may seem proper and equitable."

To this the Osage Company filed a reply, admitting that the Continental Company had gone to great expense in developing a new oil field upon its property adjacent to complainant's lease; that it was in need of plaintiff's lease for its own protection; that it was entitled to some equity in the premises, and should have the right to purchase said lease as against outsiders; and that it was entitled to purchase an interest therein from the Osage Company upon the same terms and conditions as provided in its contract with Mamie Axelrod. Certain tenders were made in said reply as follows:

"This plaintiff now, therefore, tenders to the defendant Continental Oil Company, and tenders into the court for the use and benefit of the defendant Continental Oil Company, duly executed assignments in triplicate of an undivided one-half interest in and to the said lease, same being executed according to the rules and regulations of the department governing such transfers, and now con-

sents that judgment be entered herein in favor of defendant Continental Oil Company, decreeing it to be the owner of the said property by virtue of the allegations of equity contained in its answer upon condition that the said defendant Continental Oil Company forthwith pay to this plaintiff the sum of $50,000.00 in cash and enter into like contract with plaintiff which it made with the defendant, Mamie Axelrod, or a contract of like tenor and effect."

It is evident that the first division of the prayer of the Continental Company in its answer could not be granted because it sought to quiet title to the lease in Mamie Axelrod and in the Continental Company, and the court decided adversely to this claim. The second division of the prayer was practically abandoned, as no tender was made to Mamie Axelrod at or before the trial of the assignment under which the Continental Company was holding. It certainly could not hold the assignment with the Secretary of the Interior's approval thereof, and also demand the $50,000 deposited in the bank.

The third division of the prayer was evidently the one granted by the court. The only difference between it and the confession in the reply of the Osage Company is that the $50,000 is asked in the reply to be paid to the Osage Company, instead of being deposited in court. However, in the trial the Osage Company did not ask that this money be paid to it, but asked that it be deposited in the court, and that is what the Continental Company had prayed might be done. It was stated in the trial by Mr. Fellows: "We still want to get the lease, whether from Mr. Whitehead or the other parties." While in its answer the Continental Company asked general equitable relief, without specifying what relief, it did not point out any particular equitable relief demanded. It did not ask as relief that the amount to be paid for the Axelrod contract should be decreased because of the drainage of the land or the reduction in the price of oil. It asserted the legal right to the lease if the issues of the case were decided in favor of Mamie Axelrod and the equitable right to the lease if the decision was for the Osage Company.

Counsel for appellant in the reply brief refer to the second answer filed by the Continental Company containing three additional prayers, viz. first, that the $50,000 be paid into court; second, that, if the Osage Company prevailed, the money be returned to the Continental Company; third, if the Osage Company did not prevail, that it be barred from asserting any interest in the lease. This is in the reply and cross-complaint of the Continental Company to the answer of the Exchange National Bank of Tulsa, and does not in any way seek to change the prayer of the original answer.

It was permissible, of course, to plead inconsistent defenses and to ask alternate relief. The prayers of the Continental's answer are self-contradictory. A decree on the second division would be on a theory absolutely opposite to the theory of the third division. Cutter v. Iowa Water Co. et al. (C. C.) 96 F. 777. Under this condition of the pleadings it seems to us that the Continental Company received at the hands of the court what it asked in the third division of the prayer of its answer. It therein asked (1) that an order be entered directing the Exchange Bank of Tulsa to pay the $50,000 to the clerk of the court to be held for plaintiff (Osage Company) or Mamie Axelrod. Such order was decreed by the court. It asked (2) that in the meantime it be allowed to enter upon the lease and to commence operations. The Osage Company tendered possession and the decree of the court enjoined Mamie Axelrod from interfering with possession. Again, the Continental Company secured what it had requested in this respect as far as the court could grant it. It asked (3) that all parties be required to execute instruments to vest in it valid title to a one-half interest in the lease. The Osage Company tendered at the trial such instrument and the Continental Company had such assignment from Mamie Axelrod. There was justification, therefore, we think, in the record for the finding of the court that by reason of the understandings and pleadings the Continental Company should be compelled to accept an assignment from the plaintiff of an interest in the lease under terms substantially similar to those provided in the Axelrod contract.

Viewing the broad equities of this case, it is impressive to observe that the Continental Company desired at all times to secure an assignment of an interest in the lease now decreed to be the property of the Osage Company, and that during all the time it was engaged in such enterprise it was draining the same by the wells on its adjacent premises. When the Continental Company discovered the claims of the Osage Company to the lease, it did not attempt to end the matter and secure a return of the money from the bank, but pursued its efforts to obtain an interest in the lease. It was then draining the same, as it admits in its pleadings, and as long as the lease was tied up in litigation the

drainage would go on. Its answer to the case in the Western district of Oklahoma showed its desire to secure the lease.

When the Supreme Court rendered its opinion reversing the decree of the Osage county district court, the Continental Company made no attempt to recover back its money, but continued its pursuit of the lease. It was evidently willing to take the lease from either party on the same terms as the Axelrod contract provided. When the mandate of the Supreme Court was spread upon the records of the district court of Osage county, and Mamie Axelrod's claims were wiped out, it still continued to pursue the lease, and after this suit was filed it pleaded in a way to show that its desire for the lease had not ceased, and its counsel so announced in court. It seems to us that it is bound by this course of conduct and the position so often taken, and cannot change its position after the Osage Company has relied and acted thereon. The Osage Company and the Continental Company were both bound by the pleadings in the light of the agreements and understandings, and both were estopped to take positions inconsistent therewith. It is said in 21 C. J. 1223, § 227: "A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings, and has succeeded in maintaining that position, is estopped to assume a position inconsistent therewith to the prejudice of the adverse party. * * *"

In Davis v. Wakelee, 156 U. S. 680, 689, 15 S. Ct. 555, 558 (39 L. Ed. 578), the court says: "It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Holmes v. Henry Jennings & Sons (D. C.) 7 F.(2d) 234; In re Marcella Cotton Mills (D. C.) 8 F.(2d) 522, 527; Union Trust Co. of Spokane v. Wiseman (D. C.) 10 F.(2d) 558; Equitable Trust Co. v. Connecticut Brass & Mfg. Co. (C. C. A.) 10 F.(2d) 913; Texas Co. v. Gulf Refining Co. (D. C.) 13 F.(2d) 873, 877; Smith v. Boston Elevated Ry. Co. (C. C. A.) 184 F. 387, 37 L. R. A. (N. S.) 429; McAnelly Hdw. Co. v. Bemis Bros. Bag Co., 208 Ala. 394, 94 So. 567; Albertson v. MacFarlane, 54 Cal. App. 50, 201 P. 479; Rule v. Rule, 93 Okl. 276, 225 P. 170, 172.

The doctrine of election of remedies, while not a favorite of equity, and referred to in one case in the Supreme Court as a harsh remedy, and one not to be extended, has been so long recognized that, as said by the Supreme Court in Friederichsen v. Renard, 247 U. S. 207, 211, 38 S. Ct. 450, 451 (62 L. Ed. 1075), "it is a long-observed and deeply intrenched rule of procedure."

The only complaint apparently now of the Continental Company is that it is compelled to pay a price for the one-half interest in the lease which, while all right and fair in 1926, was not fair at the time of the trial, because of the decrease in the value of the lease by the lessened price of oil and by the drainage of the leasehold. We think there is nothing in the question as to the lessened price of oil, as that is one of the gambles in dealing with property of this kind. The fluctuating character of this class of property is well known. An oil lease may be of great value to-day, and worth but little to-morrow, and, of course, in attempting to enforce contracts with reference thereto, such fact must be kept in mind. If the lease had increased in value by virtue of increased prices of oil, the Osage Company would have been held to the admissions of its reply, and its tenders in court of the assignment and possession of the property. "The rule is that a court of equity will not refuse specific performance of a contract on the sole ground of hardship, where it was fair when made, but has become a hard one through the force of subsequent circumstances and changing events." Detroit & T. S. L. R. Co. v. Detroit, T. & I. R. Co. (D. C.) 290 F. 549, 558.

If the drainage of the lease had been caused by third parties, there would be a strong equity in favor of the Continental Company, and against compelling it to now accept an interest in the lease under the same terms as provided in the Axelrod contract; but the court found that the Continental Company had drained this leasehold for more than a year at the time of the trial, and indeed its pleadings admit that it was draining the land. This was legitimate, of course; but nevertheless the drainage, while lessening the value of the leasehold had benefited the Continental Company and none other. Therefore it seems that the equities are not with the Continental Company on this phase of the situation. The Continental Company was desirous of taking an interest in the lease at a price based on its market value at the time the purchase might be completed.

In the reply brief counsel say: "And it was willing, after trial court heard the testimony as to value, to purchase a one-half interest in said lease on the basis the trial court

might then determine to be an equitable and fair purchase price." Mr. Lantz testified that the lease was worth much less at the time of the trial, and offered on behalf of the Continental Company to pay $25,000 for a one-half interest therein. The trial court gave attention to this question of the value of the lease, and referred in the trial to the answer, which pleaded that the $50,000 should be deposited in court for the benefit either of the Osage Company or of Mamie Axelrod, dependent upon the result of the case, and in connection therewith said to counsel for the Continental Company:

"The third paragraph of this answer, that an order be entered herein directing said bank to pay said sum of $50,000 to the clerk of this court, or to a receiver appointed by this court to be held either for the plaintiff— that is, the Osage Refining Company herein— or for Mamie Axelrod, and that in the meantime this defendant be allowed to enter upon the above lease and commence operations thereon, and require all the parties to this suit to execute such instrument as may place in this defendant whatever title to one-half interest in the Osage Oil & Refining Company's lease covering the above land, and for such other and further relief as to this court may seem proper. You evidently thought it was worth $50,000 at that time. You filed this answer, didn't you? You say you want it paid into this court?"

The lease in the judgment of the Continental Company was worth $50,000 at the time the answer was filed on March 25, 1927, and whether it is worth less at this time, or more, there is, of course, no way of determining. It is probable, therefore, that the Continental Company is not compelled under the order of the court to pay an excessive sum for an interest in this lease. The trial court evidently so thought.

Appellant contends that the alleged contract cannot be enforced in equity because its validity depends upon approval by a third party—the Secretary of the Interior. The general rule is stated in 25 R. C. L. 227, § 24, as follows: "A court of equity will not decree the specific performance of an executory contract when there is no method available by which its decree can be enforced. * * * It should not be forgotten, however, that in the increasing complexities of modern business relations, equitable remedies have necessarily and steadily been expanded, and no inflexible rule has been permitted to circumscribe them."

In Rice v. Theimer et al., 45 Okl. 618, 623, 146 P. 702, 704, the court said: "It seems that the test of the enforceability of such a contract is the ability of the party seeking its specific performance to secure the performance of the act by the third party. When he can secure its performance and tenders a performance thereof, as here, the contract will be specifically enforced; otherwise not." There is no effort in the decree to compel the Continental Company to accept a lease from the Osage Company that has not been approved by the Secretary of the Interior. From the decree we quote: "* * * The plaintiff shall be subrogated to all the terms and conditions of the contract of February 18, 1926, between the Continental Oil Company and Mamie Axelrod." The Axelrod contract provided that, "if said assignments and this contract are duly approved, then second party shall forthwith carry out and perform all the further agreements herein contained." In the decree the court provided that the Continental Company with the assistance of the Osage Company should attempt to secure the approval of the Secretary of the Interior.

It is also contended that the court could not decree that the Continental Company should take an interest in the Osage lease, as the same was incumbered by a mortgage. The rule is stated in Maupin on Marketable Title to Real Estate (3d Ed.) § 305, as follows: "A purchaser cannot be compelled to complete his purchase or accept the title if there is an incumbrance on the property which the vendor cannot or will not remove, and which the purchaser cannot himself remove by an application of the purchase money." The Osage Company has offered and agreed to remove the same and the decree of the court so requires. There is no specific performance until this is done. This is sufficient. Texas Co. v. Herring (C. C. A.) 19 F.(2d) 56. The decree provided in part as follows:

"It is further ordered, adjudged, and decreed that the plaintiff shall discharge all liens appearing of record in the office of the county clerk of Osage county, Oklahoma, and in the office of the Osage Indian Agency that affect or may be a charge against the above leasehold estate and shall tender and deliver to the Continental Oil Company full, complete and valid title to an undivided one-half interest in said lease in good standing with the Osage Indian Agency and the Secretary of the Interior and free and clear of any and all liens and encumbrances whatsoever, and if such title cannot be given by

plaintiff to the Continental Oil Company within thirty days from the time this decree becomes a finality, then the Continental Oil Company shall thereupon and forthwith be entitled to the return to it of the $50,000.00 herein ordered deposited with the clerk of this court and to a return and repayments from plaintiff of any operating expenses advanced and incurred by the Continental Oil Company in connection with the operation of said lease."

The decree amply protected the Continental Company as to all these matters. We are satisfied the broad equities of this case are with the appellee, and that the decision of the trial court is as correct and just a solution as can be worked out of a very difficult and complicated situation.

The decree is in all respects affirmed.

---

SYMES, District Judge (dissenting). I regret I am unable to concur with that part of the opinion of the court that decrees specific performance against the appellee, appellant, the Continental Oil Company.

Referring to the detailed statement of facts in the opinion, and without repeating the same, I am of the opinion that the meager negotiations between the parties in question did not result in any so-called "verbal agreements," and that the same is not established. The Continental Oil Company and the Osage Company were strangers; no contract relations existed between them, and their respective interests were hostile, the Continental Oil Company having derived its title through Mamie Axelrod. This is the title which the Osage Company directly contested.

When it appeared that litigation would ensue, the Continental Company, without requiring any of the parties to change their position, offered in exchange for the possession of the tract in question to conduct all proper drilling operations thereon, develop it, and hold the proceeds to abide by the event. This offer was declined by the Osage Company, so it cannot be heard to complain of any losses, etc., due to drainage or delay. An offer once refused is at an end, and the offeree cannot be compelled to keep it open.

It may be true that the Continental Company drained this property; but, if so, it did only what it had a right to do as owners of the adjoining property, and what any good oil operator would have done under the circumstances. It simply continued to protect its investment in its own tract, and the fact that it later became interested in the adjoin-

ing property did not require it to risk its other investment.

It is true that the Continental Company objects to giving up the $50,000 placed in escrow, contrary to its former expressed willingness so to do. This changed position is, however, justified by subsequent events, to wit, the wide fluctuation in the price of oil, uncertainty of drilling operations, etc. Further, at no time could it count upon obtaining a good title. Texas Co. v. Herring (C. C. A.) 19 F.(2d) 56. Neither the Osage Company nor the court had been able at any time to give a good title, and the decree entered below, and affirmed here, is in this respect conditional, and not absolute, and even after this decision is rendered the Continental Company cannot tell where it stands with any certainty. At no time has, or could, a tender be made by the other party. In Engemoen v. Rea et al. (C. C. A.) 26 F.(2d) 576, this court said (page 578):

"A court of equity will not ordinarily decree specific performance when it cannot dispose of the matter in controversy by a decree capable of present performance. It will not as a general rule enjoin a breach of a contract where to render its decree effective it would have to give continuous supervision and direction to the matters involved over a long period of time."

In Pomeroy's Equity Jurisprudence (2d Ed.) vol. 5, § 2230, it is said: "It is a familiar application of the principle as to performance by the plaintiff, that the vendor or lessor cannot force performance upon the purchaser, unless he is able to give a good title to the subject-matter."

The Continental did not pray for relief against Axelrod, but only against the Osage Company. There was no contract relation between them, so on what equitable ground can specific performance be decreed? The Osage Company did not offer to turn the property over, or ask for any specific performance in its original bill. The offer so to do was contained in its reply, so it likewise has changed its position in the midst of litigation, and likewise might have been influenced by change in conditions in the price of oil.

In dealing with similar situations arising in the oil industry, this court has always recognized the hazard involved, that values are fluctuating, and parties must act promptly. Texas Co. v. Herring, supra. As pointed out, both the Osage and the Continental have alternately opposed and asked for specific performance when, and to the extent, that it

732

was to their advantage so to do, changing their respective positions as conditions changed.

If the original offer of the Continental Company had been accepted, the property would have been developed, and a considerable sum of money accumulated to await the outcome of the litigation. This proposition would have inured to the benefit of all parties, irrespective of the final outcome of the litigation.

Specific performance is a matter of discretion, and never of right. Story's Equity Jurisprudence (14th Ed.) vol. 2, § 1026. It is available only to better enforce under proper circumstances rights arising out of contracts. This necessitates, of course, the presence of a binding contract as a condition precedent, although the mere existence of a legal contract is not alone sufficient to call forth this equitable remedy. It is a fundamental principle (25 R. C. L. 207), that equity will not decree specific performance of a contract not founded upon a valuable consideration, moving from the party in whose behalf performance is sought. In the instant case, what consideration passed from the Osage Company to the Continental?

Another factor in respect to specific performance is that it will not be decreed where the contract is not certain in its terms, and must be free from doubt, and make the precise act which is to be done clearly ascertainable.

In an English case, Wheatley v. Westminister Brym Coal Co., L. R. 9 Equity, 538, it was held that specific performance is not ordinarily awarded against the lessee under a mining lease, because all that the lessor is entitled to is payment of rent. While the fact that the value of the property which is subject to the contract increases or diminishes, does not excuse performance, yet it is a circumstance sometimes sufficient to justify the court in denying specific performance. Texas Co. v. Herring, supra. The court, under the terms of the decree affirmed, must supervise the operation of the lease, must see that the plaintiff co-operates and assists the Continental Company in appearing before the Secretary of the Interior, and undertake other duties not ordinarily assumed by a chancellor.

Further, specific performance will not be decreed when performance depends on the consent of a third person who is at liberty to withhold his consent. Pomeroy's Equity Jurisprudence, vol. 5 (2d Ed.) § 2178, p. 4890; Ellis v. Treat (C. C. A.) 236 F. 120.