### BAKER v. HAMMETT *et al.*

No. 119.    Opinion Filed March 13, 1909.

(100 Pac. 1114.)

1.    **INDIANS—Creek Supplemental Agreement—Treaties—Time of Taking Effect.** August 8, 1902, the date of the proclamation of the President making public announcement of the ratification of the Creek National Council of Act June 30, 1902 (Act June 30, 1902, c. 1323, 32 Stat. 500), commonly known as the "Creek Supplemental Agreement," was the date when the provisions thereof became binding on the United States, the Creek Nation, and all persons affected thereby.

2.    **TIME—Computation.** Except where a different intention is manifest, the general rule is that, in computing time from after a certain day or date, the first day is to be excluded and the last included to complete the period.

3.    **WORDS AND PHRASES—"Form."** The word "form," in its literal and restricted sense, generally means exclusive, but it may be used in a connection that means inclusive. In construing it, therefore, courts will take into consideration the context and subject-matter, and construe it to mean either inclusive or exclusive, accordingly as it is influenced by its connection.

4.    **INDIANS—Lands—Alienation—Removal of Restrictions.** The act above referred to provides that citizens shall not alienate the lands allotted to them before the expiration of five years from the date of its approval, to-wit, August 8, 1902. A deed was made on August 8, 1907. Held title was conveyed thereby—following **Taylor v. Brown,** 147 U. S. 640, 13 Sup. Ct. 549, 37 L. Ed. 313.

5.    **APPEAL AND ERROR—Error Appearing on Face of Record—Exceptions and Motion for New Trial Unnecessary.** Where an error in judgment appears on the face of the record proper, this court will consider and correct the same, although no motion for

new trial was filed, and no exception taken thereto in the trial court.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of the Indian Territory.*

Action by J. N. Baker against Ellis H. Hammett and others, copartners, trading as the Coweta Realty Company. Judgment for defendants, and plaintiff brings error.   Reversed and remanded.

*Williams & Williams,* for plaintiff in error.
*Roach & Bradley,* for defendants in error.

DUNN, J.   This action was brought in the United States Court for the Western District of the Indian Territory at Muskogee by plaintiff in error against the defendants in error for the purpose of canceling certain conveyances alleged to be clouds on his title to the W. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ and the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 35, township 18 N., range 16 E.; the land being the surplus allotment of a mixed-blood citizen of the Creek Nation.   Both plaintiff and defendants hold conveyances from the said allottee, and the answer contained a cross-complaint asking for the cancellation of the deeds held by plaintiff.   The conveyance executed to the parties were in the following order.   (1) To the defendants in error, July 1, 1907.   (2) To the plaintiff in error, July 9, 1907.   (3) To the defendant in error, July 27, 1907.   (4) To the plaintiff in error, August 8, 1907.   (5) To the defendant in error, August 9. 1907.   (6) To the plaintiff in error, August 8, 1907.   The question presented requires the determination by us of the date on which the Creek supplemental agreement took effect.   The court below found for the defendants in error, who were defendants below, and plaintiff appealed, and the case is now before us for consideration.

The act involved is entitled "An act to ratify and confirm a supplemental agreement with the Creek tribe of Indians, and for

Vol. 23—31

other purposes, approved June 30th, 1902." Act June 30, 1902, c. 1323, 32 Stat. 500. The portions of it which are material to this controversy are as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the following supplemental agreement, submitted by certain commissioners of the Creek tribe of Indians, as herein amended, is hereby ratified and confirmed on the part of the United States, and the same shall be of full force and effect if ratified by the Creek tribal council on or before the first day of September, nineteen hundred and two, which said supplemental agreement is, as follows:

"This agreement by and between the United States, entered into in its behalf by the Commission to the Five Civilized Tribes, Henry L. Dawes, Tams Bixby, Thomas B. Needles, and Clifton R. Breckenridge, duly appointed and authorized thereunto, and the Muskogee (or Creek) Tribe of Indians, in Indian Territory, entered into in behalf of the said tribe by Pleasant Porter, principal chief, Roley McIntosh, Thomas W. Perryman, Amos McIntosh, and David M. Hodge, commissioners duly appointed and authorized thereunto, witnesseth, that in consideration of the mutual undertakings herein contained it is agreed as follows. * * *

"(16)   Lands allotted to citizens shall not in any manner whatever or at any time be encumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement. * * *

"(21)   This agreement shall be binding upon the United States and the Creek Nation, and upon all persons affected thereby when it shall have been ratified by Congress and the Creek National Council, and the fact of such ratification shall have been proclaimed as hereinafter provided.

"(22)   The principal chief, as soon as practicable after the ratification of this agreement by Congress, shall call an extra session of the Creek National Council and submit this agreement, as ratified by Congress to such council for its consideration, and if the agreement be ratified by the National Council, as provided in the Constitution of the tribe, the principal chief shall transmit to the President of the United States a certified copy of the act of the council ratifying the agreement, and thereupon the President shall issue his proclamation making public announcement of

such ratification, thenceforward all the provisions of this agreement shall have the force and effect of law.

"Approved June 30, 1902."

Counsel for defendants in error strenuously insist and argue that the controlling date of approval was June 30, 1902, and that the five-year period of restriction upon the power of the citizens of the Creek Nation to alienate their lands began to run on that date. This argument is based upon section 16, which provides, as we see, that "lands allotted to citizens shall not   *   *   * be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement." And that if the word "approval," as contained in this section, did not apply to the date when Congress approved the act, it did relate to the date when the same was approved by the Creek National Council, to wit, July 26, 1902. They insist, however, that defendants in error are entitled to prevail, even should this court find that the correct date was neither of these, but was August 8, 1902, at which time the President issued his proclamation making public announcement of the ratification of the agreement. Counsel for plaintiff in error take the position and argue that the restrictions upon the alienation of this land by their client's grantor were removed on the 7th day of August, 1907, and not before, and that when the deed was executed by the allottee to him on August 8, 1907, it conveyed to him the full legal title; that this was the earliest date that the allottee could convey such title; and that, after having made his conveyance, the one made and delivered to the defendants in error on the day following, to wit, August 9, 1907, conveyed no title. The foregoing succinctly states the contentions of the parties to the controversy. We are not able to agree with counsel for defendants in error on either of the first two propositions—either that the date of June 30, 1902, or July 26, 1902, was the date from which the five-year period should be computed.

Close scanning of the enacting clause, taken in conjunction with sections 21 and 22, presents, it seems to us, the provisions which must be held to be controlling. Stripping each of these

of the verbiage not necessary to be considered for our present purpose, they would then read substantially as follows:

"The following supplemental agreement shall be binding upon the United States and the Creek Nation and upon all persons affected thereby when it shall have been ratified by Congress and the Creek National Council, and the fact of such ratification shall have been proclaimed: * * * if the agreement be ratified by the (Creek) National Council * * * the President shall issue his proclamation making public announcement of such ratification, thenceforward all the provisions of this agreement shall have the force and effect of law."

From this language it will be noted that the act on the part of the United States was passed subject to and became binding only, after the happening of two contingencies: First, its ratification by the Creek National Council; second, the public announcement thereof by proclamation by the President of the United States. Congress, no doubt, had the power to make as conditions precedent to its validity, binding force and effect the two conditions above named. This being true, until these concurred, in our judgment the act was not binding upon the United States or the Creek Nation, and no one was affected thereby.

Counsel for defendants in error insist that the word "approval," as used in section 16, must be given some force and effect distinguishable from the word "ratified," as used in sections 21 and 22. On this we are likewise not able to agree with counsel. There is nothing in our judgment in the act itself or in the context and relationship in which the two words are used which requires the distinction sought to be drawn to be made. Webster defines the word "ratify" as follows: "To approve and sanction; to make valid; to confirm; to establish; to settle; especially to give sanction to, as something done by an agent or servant; as, to ratify an agreement, treaty, or contract." The word "approve" is by the same author rendered synonymous with "to sanction officially; to ratify, to confirm." The Century Dictionary and Cyclopedia defines "ratify" as "to validate by some formal act of approval," and "approval" is defined as "to sanction officially;

ratify authoritatively." Thus we see that the highest lexicographic authority exists for the interchangeable use of the terms "approve" and "ratify," and from the view of the salient features of the act relating to its ratification or approval which we have above noted, and the force which we believe is carried thereby, we are not able to agree that, when the word "approval" is used as it is in section 16, it related solely to the action on the part of the United States. Nor do we find any reason within the act to hold that a different date was intended to be operative in reference to the provisions of the agreement relating to the alienation of the lands from that affecting the other general provisions thereof. The foregoing presents our views upon this question, and we hold that August 8, 1902, the date of the proclamation of the President making public announcement of the ratification of the act by the Creek National Council, was the date when the provisions thereof became binding upon the United States, the Creek Nation, and all persons affected thereby, and that thenceforward was the earliest date that its provisions had the force and effect of law.

This brings us to the question of which conveyance, the one made to plaintiff in error on August 8, 1907, or the one to defendants in error August 9, 1907, should prevail. Except where a different intention is manifest, the general rule is that in computing time from or after a certain day or date the first day is to be excluded and the last included to complete the period. Lewis' Sutherland Statutory Construction (2d Ed.) 1904, § 184. The rule thus indicated is by no means uniform, however, as an investigation of the cases wherein it is involved shows. The courts are sometimes largely swayed by the facts of the particular case before them, and the connection in which the question arises. Those interested will find the subject elaborately treated in notes to the cases of *State v. Michel,* 78 Am. St. Rep. 364, and *Conway v. Smith Mercantile Co.,* 49 L. R. A. 201.

On this subject in a case in which very full consideration is

given to it—*Taylor v. Brown,* 5 Dak. 335, 349, 40 N. W. 525, 530—Justice Thomas said:

"We do not claim that there is a uniformity of decisions of the courts of this country in regard to this question, but we admit there is somewhat of conflict; but from a thorough examination of them we arrive at the following conclusion: That there is no absolute or well-settled rule of computation, but that courts will always adopt that construction which will uphold and enforce, rather than destroy, *bona fide* transactions and titles, and whenever it is necessary to prevent a forfeiture or to effectuate the clear intention of the parties the *dies a quo* will be included, otherwise they will be excluded. We think that the word 'from' in its literal and restricted sense means 'exclusive,' but it may be used in connection that means inclusive, and it is quite frequently used in the latter sense; and therefore in constructing it courts will take into consideration the context and subject-matter, and construe it to mean either inclusive or exclusive, accordingly as it is influenced by its connection."

This case is similar to the case at bar, in that there is involved therein the construction of an act of Congress relating to the alienation by Indians of their lands received under and by virtue of its terms. The facts out of which the controversy arose are stated, and the portion of the statute involved is quoted by the court, as follows:

"On the 15th day of June, 1880, one Thomas K. West, a Santee Sioux Indian, became the owner of the lands described in the pleadings by a patent from the United States. The said West, being an Indian, received his title under the provisions of the statute of the United States giving certain Indians who should abandon their tribal relations the right to enter and hold lands under the homestead law. The statute above referred to contains the following proviso: 'Provided, however, that the title to lands acquired by any Indian by virtue hereof shall not be subject to alienation or incumbrance, either by voluntary conveyance, or the judgment, decree, or order of any court, and shall be and remain inalienable for the period of five years from the date of the patent therefor.' Act March 3, 1875, c. 131, § 15, 18 Stat. 420 (U. S. Comp. St. 1901, p. 1419)."

The Indian, West, made two deeds to the land, one on the 15th day of June, 1885, and the other on the 17th day of June,

1885, and the question before the court was: Which of these deeds was valid and conveyed title? It will be observed that this depended upon the construction to be placed upon that portion of the act which provided that the title to the lands acquired thereunder should "be and remain inalienable for a period of five years from the date of the patent issued therefor." And the court in construing this statute included the day of the date of the patent, and decided that the deed made on the 15th day of June, 1885, was a valid and legal conveyance of the land, and that that day was not within the period of limitation provided for by the statute. This case was appealed to the Supreme Court of the United States and is reported in 147 U. S. 640, 13 Sup. Ct. 549, 37 L. Ed. 313. That court in affirming the Supreme Court of the territory of Dakota held:

"In computing the time during which the alienation of public land acquired by an Indian under the provisions of section 16 of the Act of March 3, 1875 (18 Stat. 420, c. 131 [U. S. Comp. St. 1901, p. 1420]), is forbidden, the day of the issue of the patent should be included."

The theory upon which the Supreme Court of the United States held that the day of the date that the patent was issued should be included seems to · be that except for the limitation taking effect, at the same moment with the delivery of the patent, the patentee could have alienated the land on receipt of patent. The restriction on alienation existed on the delivery of the patent and this provision of the statute was simply a continuation of the restriction which already existed. The limitation on alienation was to be and remain; that is to say, was to be on the first day not subject to alienation, and so remain until the five years had expired. In the case at bar it will be observed that the language of the act restricting alienation by the allottee is that his land should not be alienated "before the expiration of five years from the date of the approval of this supplemental agreement," which in our judgment so far as this case is concerned means the same thing as the language of the act construed by the Supreme Court of the United States providing that lands acquired thereunder

should "be and remain inalienable for the period of five years from the date of the patent issued therefor." This construction on the part of the Supreme Court of the United States we regard as controlling, and we therefore hold that the deed executed and delivered on August 8, 1907, to the plaintiff in error was valid.

The case was brought to this court on a transcrpit of the record containing the complaint, answer, cross-complaint, report, and judgment in all of which there appears to be a virtual agreement upon all of the facts out of which the controversy arises. To the report mentioned no exceptions were taken or saved by the plaintiff in error. The court on hearing the cause confirmed the same, and entered a decree in favor of the defendants in error. No exceptions were saved to this decree, and no motion for new trial filed, and the defendants in error have now lodged in this court a motion to dismiss the appeal because of these alleged deficiencies. Prof Burdick in his work entitled "New Trials and Appeals," written with special reference to appellate practice in Oklahoma and Kansas, says at section 189 that "where the error is apparent upon the record, as where the final judgment is alleged to be erroneous, such error will be reviewed without the requirement of an exception." The text is supported by numerous authorities, among which are *Territory of Oklahoma ex rel. v. Caffrey*, 8 Okla. 193, 57 Pac. 204, and *Caffrey v. Overholser*, 8 Okla. 202, 57 Pac. 206.

In the case of *Oklahoma v. Caffrey, supra*, the third syllabus read as follows:

"Rulings and orders of the trial court as applied to the evidence, those constituting errors of law occurring on the trial, and generally rulings upon the trial of the cause complained of must be excepted to at the time, and preserved in the case-made, or be brought into the record by bill of exceptions, to authorize this court to consider them. But exceptions are not necessary to enable this court to review and correct errors that are apparent upon the judgment roll or record proper. Where an error in a judgment appears on the face of the record proper, this court will consider and correct the same, although no exception was taken thereto in the trial court."

And to the same effect is the first paragraph of the syllabus in the case of *Caffrey v. Overholser, supra:*

"Exceptions need not be taken in the trial court to enable this court to review and correct errors that are apparent upon the judgment roll or record proper. Where an error in a judgment appears upon the record proper, this court will consider and correct the same, although no exception was taken thereto in the trial court."

Nor was it necessary in such a case to file a motion for new trial. *Board of Commissioners of Garfield County v. Porter et al.,* 19 Okla. 173, 92 Pac. 152; *Lee v. United States,* 7 Okla. 558, 54 Pac. 792; *Kellogg v. School District No. 10 of Comanche County,* 13 Okla. 285, 74 Pac. 110. In consideration of the case last cited, Chief Justice Burford said:

"There are some errors that may be presented for the first time in this court. It is a general rule that the appellate court will not review any alleged errors which were not presented to the trial court for its reconsideration, yet there are some exceptions to this rule. When the error is apparent upon the face of the judgment roll, or as we say in more modern language, upon the face of the record proper, then such error will be considered by the appellate court, although not presented to the trial court in the motion for new trial."

The question raised here is of the character above noted, and, on the authority of the foregoing citations, the motion is overruled.

The judgment of the lower court is accordingly reversed, and the cause is remanded to be proceeded with in accordance with the law as declared herein.

All the Justices concur.