**PURE OIL CO. et al. v. QUARLES et al.**

No. 24807. May 21, 1935.

Rehearing Denied June 18, 1935.

Application for Leave to File Second Petition for Rehearing Denied July 9, 1935.

Alvin Richards, Hamilton & Howard, E. H. Chandler, Summers Hardy, and Robert L. Imler, for plaintiffs in error.

McCoy, Craig & Pearson, for defendants in error.

RILEY, J. This is an appeal from a judgment in favor of defendants in error, herein referred to as plaintiffs, and against plaintiffs in error, in an action for damages for wrongful pollution of stock water supply in certain pasture lands, which plaintiff claimed to have had under lease, whereby plaintiffs assert they were deprived of the benefit of a contract which they had with one Mark Bozarth to sublease, or sell the use of, said pasture lands, together with certain hay and other feed. Verdict was for plaintiffs for actual and exemplary damages. The exemplary damages allowed by the verdict was for $1,000. On motion for new trial the court ordered plaintiffs to remit $750 of the amount allowed as exemplary damages, and that in case they refused so to do, a new trial would be granted.

Plaintiffs excepted to the order, but filed a remittitur in said sum. They filed a cross-petition in error because of this order.

The substance of plaintiffs' petition is that they had under lease for the last four months of 1930, and the year 1931, a large tract of land in Osage county, comprising some 2,960 acres, known as the Bennett pasture; that a part of said lands they held under oral lease or agreement with the owners thereof, or their lessees, and the remainder they held under written leases with the owners thereof. That some time in the summer of 1930, plaintiffs entered into an oral contract with Mark Bozarth for the renting of said lands for the fall of 1930, and the year 1931, for pasturing and feeding cattle, and for the sale of certain hay and other feed which plaintiffs then owned, for the aggregate sum of $5,600; that defendants were the owners of, and were operating certain oil and gas wells on certain lands adjacent to the Bennett pasture; that about September 1, 1930, and after the alleged contract between plaintiffs and Bozarth, defendants wrongfully, unlawfully, willfully, deliberately, and in wanton and reckless disregard of plaintiffs' rights, and in violation of section 7969, C. O. S. 1921 (sec. 11580, O. S. 1931), caused or permitted salt water and other deleterious substances and waste matter to escape from their oil and gas mining operations and flow over the surface and into a branch of stream running in or through their pasture so as to pollute the supply of stock water in said pasture lands, and that as a result thereof Bozarth declined to carry out his agreement with plaintiffs, whereby plaintiffs lost the benefit of their contract with Bozarth, and were unable to rent said pasture to others, or sell their said hay or feed, except that they did obtain some $300 from the sale of said hay and feed, all to plaintiffs' damage in the sum of $5,300.

The verdict, upon which judgment was entered, as to actual damages was for $3,950.

Defendants first contend that the court erred in giving instruction No. 7, which in substance told the jury that in case the issues were found for the plaintiffs, they would be entitled to such an amount as the jury might find from the evidence that plaintiffs had lost as a proximate result of the contract between plaintiffs and Bozarth not being carried out by Bozarth, in case the jury should find there was such a contract.

Defendants assert that said instruction did not submit to the jury any question of special damages and for that reason did not submit the issue made by the second amended petition, upon which the case was tried, but departed from both the pleadings and proof and submitted the question of general damages, and was therefore error.

There is no merit in the contention. This instruction must be considered in connection with the other instructions. The instructions as a whole submit only the question of special damages, and clearly told the jury that plaintiffs were entitled to recover only such actual damages as proximately resulted from the failure of Bozarth to carry out the contract to rent the pasture and buy the feed, and that only in case the jury should find that the sole cause of Bozarth's refusal to carry out such contract was the pollution of the stock water in the pasture by defendants.

It is next contended that the court erred in submitting to the jury the question of whether or not there was a contract between plaintiffs and Mark Bozarth for the rental or sublease of the so-called Bennett pasture.

In this there was no error. While the evidence of the contract is not as clear as it might have been, plaintiff Quarles did testify relative to his agreement with Bozarth.

"By the Court: Q. What were the words that you used and the words that he used

as nearly as you can remember, with reference to the price to be paid? A. The price I made to him was a dollar an acre for the pasture, $10 a ton for the hay, and $8 per acre for the feed. There was no objection. Mr. Bozarth said he would take the pasture at a dollar an acre, and he would—he thought the price of the feed was too much. * * * A. On that my recollection about it is that we had several conversations about it, and he said he would go down and look at it. Afterwards he came back and said that he would take it if he could get the cattle, afterwards he said that he would take it. Q. Do you know about when he told you that he would take it, Mr. Quarles? A. I know that he told me that he would take it."

That was sufficient to justify the court in submitting the question to the jury so far as the pasture is concerned.

After the demurrer to plaintiffs' evidence was overruled, defendants called Bozarth as a witness, and he, in effect, corroborated the statement of Quarles, though he did admit that he had on a former occasion denied that there was an agreement between himself and Quarles as to the pasture land.

Possibly it may be true that there was no such binding contract as could have been enforced by plaintiffs as against Bozarth, but Bozarth testified that he was willing to carry out his agreement as to the pasture, and would have carried it out except for the pollution of the water which occurred afterwards.

It is next contended that the court erred in submitting to the jury the question of the right of plaintiffs to recover on the item of loss of sale of the hay and feed to Bozarth.

In this there is merit.

There is no evidence in the record that there ever was a contract between plaintiffs and Bozarth for the sale of the hay and feed. The only competent evidence relative to any agreement for the sale of the hay and feed was the testimony of Quarles and Bozarth.

Quarles' testimony, in addition to that quoted above, was:

"Q. Well, now, you say that you finally came to an agreement on this feed with Miles Bozarth? A. I think so; yes, sir. Q. Well, now—. A. I would call it an agreement. Q. What? A. I accepted it as an agreement by him cutting off or rather reducing the price of the stock feed which had grain on it from $8 to $7 an acre."

And:

"Q. Just go ahead and tell the jury what you agreed on, or what you said there. A. Well, I made him a price on the pasture. Q. What was it? A. A dollar an acre for the use of the pasture, and with the understanding that he would buy the feed that we had on the farm in the pasture at the market price, which we tentatively agreed on, the acreage and tonnage to be determined by measurement. Q. Did you have any talk there about the price that this feed was to go in at? A. Yes. Q. Well, did you figure up, or did you concede to him as to his price on it—approximately? A. Approximately, yes. Q. After doing that, did you figure up what the total amount would be that he would pay you for the use of the pasture, subject to any correction in area or amount? A. We did. Q. What did that amount to? A. Approximately $5,600, the use of the pasture and the feed."

Bozarth testified:

"Q. Just tell the court and jury what was said about this feed, Mr. Bozarth. Mr. McCoy: We object to that as repetition. Mr. Howard: Well, I mean the details of the conversation, if the court please. The Court: Go ahead, overruled. Mr. McCoy: Exception. A. Well, I think he told me what he wanted, what he asked for it, I didn't tell him whether I would take it or not. Mr. Howard: Cross-examine. A. I was interested in getting the pasture."

And on cross-examination:

"Q. Was it your intention, Mr. Bozarth, to use this feed out there in feeding those cattle during the winter? Mr. Howard: We object to that, if the court please. The Court: Overruled. Mr. Howard:—for the reason that they plead a specific contract in the buying of the feed. The Court: Overruled. Mr. Howard: Exception. The Court: Answer the question. A. Yes, s'r. A. If I could buy it at a price I thought I could use it, I intended to use it. By Mr. McCoy: Q. And you had two or three different conversations with Mr. Quarles about the matter, didn't you? A. I did, yes, sir. Q. At first he wanted a lot more for the kaffir corn and the cane than you felt like paying, didn't he? A. Well I thought this way, when I got the pasture I could buy the feed because I would have—I really figured that I would have the advantage of it because probably he would not have any other chance to sell it, and he would sell it to me. Q. A man in possession of the pasture would have a better opportunity of using that feed than any one else? A. Yes, sir."

And on redirect:

"Q. Will you tell the court and jury whether or not you ever agreed at any time to pay Mr. Quarles $5,600 for the pasture and feed? Mr. McCoy: Now, we object to

that as not redirect examination and repetition. The Court: Overruled. Mr. McCoy: Exception. A. No, I don't think so, and it is, so far as I went I was to give him a dollar an acre for that pasture, and the buying of the feed was a future consideration, I expected to buy it, but I expected to have something to say about the price."

It clearly appears from the record that there was no contract or agreement for the sale of the hay and feed to Mr. Bozarth. There was no evidence upon which to submit the question of loss sustained by plaintiffs by reason of failure of Bozarth to carry out any contract for the purchase of the hay and feed. This is important in view of the amount of the verdict. The most that plaintiffs could claim is a loss of the sale of the pasturage was $2,960, and possibly not more than $2,950, for there is some doubt about a certain ten acres of the land claimed as being within the pasturage. All the parties agree that if there was a contract for the use of the pasture, the amount to be paid was $1 per acre, and plaintiffs do not claim to have had more than 2,960 acres of land under contract. Bozarth testified, however, that it was his understanding that the pasture contained some 3,900 acres. The jury must have allowed something in the verdict of $3,950 actual damages for and on account of loss in the sale of the hay and feed, or allowed for 3,950 acres at $1 per acre when there was, under the pleadings and uncontradicted evidence, not more than 2,960 acres of land in the Bennett pasture. It was error to submit the question of damages for the item of loss of sale of the hay and feed.

The judgment might properly be reduced were it not for the fact that there were certain lands within the pasture which plaintiffs did not own and had no lease upon. This land is referred to as the Drummond land. Plaintiffs claim they had permission from the owners to use it in compensation for other lands controlled by plaintiffs and used by some of the Drummond interests. This was denied by Cecil Drummond, the party with whom plaintiffs claim to have had their agreement. The showing made by plaintiffs in this regard was not sufficient to justify damages for the loss of the sale of the pasturage of the Drummond land. It may be that the jury did not consider this land in their verdict in view of the testimony of Bozarth to the effect that he understood he was to get about 3,900 acres. In such case the jury must have allowed more on account of the alleged loss of sale of the hay and feed.

The questions raised by defendants on the measure of damages are without merit. The question that plaintiffs could in no case, under the pleadings and evidence, recover special damages is also without merit. Inasmuch as the case must be reversed for the errors pointed out, we deem it unnecessary to consider these questions at length.

In view of the fact that most of the evidence relied upon by plaintiffs to establish their claim for exemplary damages was concerning matters occurring after the time when Bozarth declined to take the pasturage because of the pollution of the water, we think the trial court was justified in requiring a reduction of the exemplary damages.

The whole judgment, however, must be, and the same is reversed and the cause remanded for a new trial.

McNEILL, C. J., and BUSBY, PHELPS, and GIBSON, JJ., concur.