**PURE OIL CO. et al. v. QUARLES et al.**

No. 27659. June 21, 1938.

E. H. Chandler, Summers Hardy, Alvin Richards, and Hamilton & Kane, for plaintiffs in error.

McCoy, Craig & Pearson, for defendants in error.

GIBSON, J. This action was instituted in the district court of Osage county by defendants in error, referred to herein as plaintiffs, against the plaintiffs in error, referred to herein as defendants, to recover damages resulting from the pollution of a stream by salt water.

This cause has been here before (Pure Oil Co. v. Quarles, 173 Okla. 153, 47 P.2d 124). After remand thereof for new trial the parties waived jury, and trial to the court resulted in judgment for plaintiffs, and defendants appeal.

In preparing their appeal defendants allowed their extended time for preparing and serving case-made to expire. Approximately 39 days after the expiration of the extension given, the defendants applied to the court for a further extension of time in which to prepare and serve case-made upon the ground of accident and misfortune which could not have been reasonably avoided, whereby they had been prevented from preparing and serving case-made within the time formerly granted. Pursuant to notice duly given, the application of the defendants was heard and granted by the trial court on October 19, 1936. The plaintiffs reserved exceptions thereto and have filed a cross-appeal here assigning as error the action of the trial court in granting the extension, and urge that such order is invalid in that it is unsupported by any competent evidence.

Upon showing of accident or misfortune which could not reasonably have been avoided by the party appealing, the trial court may make an order extending the time in such case after the expiration of the time fixed by statute or by previous orders. Section 538, O. S. 1931, 12 Okla. St. Ann. sec. 962. Cross-appeal by defendant in error is the proper procedure for obtaining a review of the court's order in such

case. Bruner v. Eaton, 121 Okla. 249, 249 P. 734. In the absence of evidence of unavoidable accident or misfortune to support the order, the same will be reversed, and mere inadvertence, mistake, or oversight is not sufficient to support the same. Id.

"In the Bruner Case, above, it was held that the failure of the district judge to receive and sign an order of extension which had been mailed to him within two days prior to the expiration of a previous order of extension did not constitute an accident or misfortune which could not reasonably have been avoided, and that an order of extension subsequently granted on such ground was invalid. In the case at bar the claim of accident and misfortune made by the defendants is based upon a misunderstanding of certain correspondence which had passed between the local attorney and division attorneys for the defendants. It appears that the local attorney understood that he was to receive further advices before ordering the case-made, and that the division attorneys were under the impression that their letters had definitely directed the local attorney to proceed with the appeal. In connection with the application, affidavits of the respective attorneys were attached thereto, and the local attorney states that the failure · to obtain the order extending the time previously given was occasioned by misunderstanding of instructions and oversight. This was unfortunate, but does not constitute an accident or misfortune which could not reasonably have been avoided It further appears from the record that no steps were taken to order a case-made or to perfect the appeal, either within the time originally granted or for nearly 39 days thereafter. The evidence of the defendants showed neither diligence nor due care in preserving their right of appeal. Under these circumstances, the language of Bruner v. Eaton, supra, is very appropriate, wherein this court said:

"Under the facts shown by the evidence here, we can find no reasonable justification for the extension of the time and can reach no other conclusion but that the failure to obtain the extension of time was due to the defendants' own negligence."

Had the defendants exercised only a slight degree of care, they could have protected their record and obviated any necessity of invoking the provisions of section 538, O. S. 1931, but since they did not do this and failed to show any accident or misfortune

sufficient to support the order which granted them a further extension of time in which to prepare and serve case-made, such order was ineffectual for any purpose. It follows that the case-made which has been filed in this court was not prepared and served within the time provided by statute or any authorized extension, and therefore the same presents nothing to this court for review except errors appearing upon the record as a certified transcript. Jones v. Blanton, 130 Okla. 200, 266 P. 438.

It is urged that there are certain errors appearing upon the face of the record proper, duly assigned in the petition in error and reviewable as upon transcript.

The case-made is sufficient as a transcript of the record, and any errors as aforesaid, duly assigned, are reviewable. The rule is stated in Baker v. Hammett, 23 Okla. 480, 100 P. 1114, as follows:

"Where an error in a judgment appears on the face of the record proper, this court will consider and correct the same, although no motion for new trial was filed, and no exception taken thereto in the trial court."

See cases in accord: International Harvester Co. v. Cameron, 25 Okla 256, 105 P. 189; Tribal Development Co. v. White Bros., 28 Okla. 525, 114 P. 736; Grissom v. Beidleman, 35 Okla. 343, 129 P. 853; Gourley v. Williams, 46 Okla. 629, 149 P. 229; Pace v. Pace, 70 Okla 42, 172 P. 1075; Wilkinson v. Whitworth, 169 Okla. 286, 36 P.2d 932; Sweeney v. Home Bldg & Loan Ass'n, 176 Okla. 596, 56 P.2d 797, 800.

The defendants, appellants herein, insist that the special findings of fact and conclusions of law constituted a part of the record proper; that the judgment is not supported by the facts as found, and may be reviewed as on transcript for the purpose of determining that question.

The cause was tried to the court, and the special findings and conclusions were made at the request of counsel as authorized by section 374, O. S. 1931, 12 Okla. St. Ann. sec. 611, signed by the judge and recorded in the journal, but they were not incorporated in the final judgment or the instrument commonly referred to as the journal entry of judgment.

Plaintiffs say that the special findings and conclusions as aforesaid constitute no part of the record proper as defined in section 435, O. S. 1931, 12 Okla. St. Ann. sec. 704, and the same may not be reviewed except when duly excepted to, presented in

motion for new trial, and incorporated in the record on appeal by means of case-made or bill of exceptions. Larkin v. Barker, 134 Okla. 46, 272 P. 882; Scruggs v. Kessinger, 175 Okla. 510, 53 P.2d 1125. Plaintiffs also take the position that in no event will rulings be reviewed in the absence of exceptions timely made. General Explosives Co. v. Wilcox, 131 Okla. 190, 268 P. 266; Cowen v. T. J. Stewart Lbr. Co., 177 Okla. 266, 58 P.2d 573.

This court has said on at least two occasions that the special findings of fact and conclusions of law when requested, as in the instant case, become a part of the record. Watashe v. Tiger, 88 Okla. 77, 211 P. 415; Setzer v. Moore, 164 Okla. 70, 22 P.2d 998. In Watashe v. Tiger, above, following the decision of the Territorial Court in United States v. Choctaw, Oklahoma & G. R. Co., 3 Okla. 404, 41 P. 729, we held:

"Upon the trial of questions of fact by the court, if timely request is made therefor, it is the duty of the court to make specific findings of fact and conclusions of law, and if these are entered upon the journal, they become a part of the record; but where the court voluntarily makes specific findings of fact, not upon the request of one of the parties to the cause, although made in writing, the same is not a part of the record, and will be treated as a general finding only."

Without doubt, special findings of fact and conclusions of law made at request of counsel and recorded in the journal, as was the case here, become part of the record proper.

Plaintiffs say that no exceptions were saved to the special findings and conclusions, and for that reason the same may not be reviewed. As a general proposition, rulings of the trial court to which no exceptions are saved will not be reviewed. Rafferty v. Collins, 160 Okla. 63, 15 P.2d 600, and cases there cited. But the well-recognized exception to that rule is where the error appears upon the record proper. Baker v. Hammett, and cases cited following, above. The question of exceptions to the findings and conclusions become immaterial. They become a part of the record and are reviewable to the extent of determining whether correct application of the law was made to the facts as found. The facts as found by the court are final; the evidence upon which the findings are based is not presented in the transcript by proper bill of exceptions. Barker v. Southwest Homes Corp., 162 Okla. 77, 19 P.2d 141.

In Larkin v. Barker, supra, when considering an almost identical situation, we held that, since no exceptions were saved to the court's alleged erroneous application of the law to the special findings of fact, the same could not be reviewed on transcript. Unfortunately, we there applied the general rule as stated above and failed to take into account the exception thereto applying where the error appears upon the face of the record. The general rule applies alone to those rulings not apparent upon the record proper and which must be assigned here by petition in error accompanied by case-made or transcript and bill of exceptions after motion for new trial duly presented and overruled. To the extent that review of rulings appearing upon the face of the record depends upon exceptions thereto, the decision in Larkin v. Barker supra, is overruled. See, also, Scruggs v. Kessinger, supra, where the court in the body of the opinion purports to apply the rule stated in the Larkin Case. The language there used in connection with the question of the review of alleged errors in applying the law to special findings is also disapproved.

The special findings now stand as the facts in this case. If the court has erred in applying the law thereto, we should correct the error and render appropriate judgment. As stated in Union National Bank v. Jones, 152 Okla. 211, 4 P.2d 62, "where only matters of law are involved, this court will render such judgment as the lower court should have rendered."

The facts as settled by the trial court's findings are as follows:

In the fall of 1930 plaintiffs were in the peaceable and undisputed possession of a pasture, all under fence, comprising 2,960 acres, which they used for grazing cattle. They entered into an oral contract with one Miles Bozarth whereby they agreed to let him have the use of the pasture at a price of $1 per acre for the remainder of the year 1930 and the year 1931. Defendants occupied certain adjacent premises under an oil and gas mining lease, and in the course of their operations had allowed salt water to run into and pollute the only fresh water supply in said pasture. This pollution occurred subsequent to the aforesaid contract, and when Bozarth learned of the conditions he declined to carry out the contract with plaintiffs, resulting in damages to them in the sum to be paid under the breached contract, or $1 per acre, less 480 acres known as the Cecil Drummond

lease and eliminated by the trial court by reason of the language of this court in reference thereto on the former appeal of this case.

Of the remaining 2,480 acres, the court found that plaintiffs' leases on 680 thereof expired April 1, 1931, and on 480 acres their leases did not commence to run until April 1, 1931. Plaintiffs had extension privileges on all leases.

Bozarth declined to carry out the terms of the contract for the sole reason that after the pollution there was not sufficient fresh water in the pasture. There is no finding that Bozarth would have declined the contract by reason of the fact that plaintiffs' leases on 640 acres were to expire April 1, 1931, and their leases on 480 acres were not to commence until that date, as aforesaid. There is, however, a finding that 1,720 acres would have been inadequate for Bozarth's purposes and of no use to him.

Defendants say that, as applied to the foregoing facts, the trial court's conclusions of law numbered third, fifth, and sixth were erroneous. The conclusions read as follows:

"Third. The court further finds, as a matter of law, that the plaintiffs herein, by reason of the wrongful conduct of the defendants in permitting salt water to escape from their oil mining leases, and to pollute the waters in the pasture in controversy were deprived of the opportunity to carry out the terms of their contract with Miles Bozarth, and that by reason thereof they have sustained actual damages in the sum of $2,480."

"Fifth. The court further finds that, as a matter of law, in conformity with the opinion of the Supreme Court heretofore rendered, that the sum of $250 for punitive or exemplary damages is a proper item of damage, and should be under the facts allowed.

"Sixth. The court further finds as a matter of law that under the law applicable to land situated in Osage county, the plaintiffs herein, being in possession of the pasture in question, would have the right either to use said pasture or to lease it to some other person, and that the persons owning land therein, upon which the plaintiffs herein did not have a valid lease, would have the right to either sue the plaintiffs and recover judgment for what is known as trespass money, that is, for the fair market value or the use of said land, or that they would have the right to turn into the said pasture a sufficient number of cattle of their own to graze upon the land owned by such persons, such number to be determined by the proportionate grazing capacity as prorated to the entire number of acres contained within said pasture."

Judgment was rendered in favor of plaintiffs for the sum of $2,480 actual damages, and for $250 punitive damages.

As to the merits of the cause, the only question presented for review by the transcript and petition in error is whether the court in its conclusions aforesaid correctly applied the law to the foregoing facts.

That the defendants committed a trespass upon the lands occupied by plaintiffs is beyond question. Regardless of plaintiffs' right to possession of the premises (63 C. J. 1058, sec. 262), defendants were liable for nominal damages. 63 C. J. 1035, sec. 225. In an action for damages to personal property arising from trespass upon land the defendant may not question the plaintiff's right to possession of the premises. Holden v. Lynn, 30 Okla. 663, 120 P. 246; Verland Oil & Gas Co. v. Walker, 100 Okla. 258, 229 P. 235. But we do not mean to say that the plaintiff in such case may recover for damages resulting to property or to rights which he does not own or possess.

Defendants contend that the findings of fact will not support the judgment for the reason that it is shown that plaintiffs were not in a position at the time of the trespass to transfer to Bozarth some 1,160 acres in leases for the full term agreed upon in their oral contract. They say that to eliminate those leases expiring April 1st and those not commencing until April 1st, would leave only 1,320 acres in leases subject to transfer by plaintiffs, and an area less, according to the findings, than Bozarth would have accepted.

No question of assignment of grazing leases arises in this case. The agreement between plaintiffs and Bozarth was that the latter should have the use of the pasture for a specified period and pay therefor the sum of $1 per acre. There is no finding that the plaintiffs were unable to fulfill their part of the contract or that they could not have protected Bozarth in his use of the pasture, and there is nothing to indicate that Bozarth was not ready and willing to accept and use the pasture under the circumstances then existing, and to pay therefor. As we have said, he declined only because of the pollution. The facts in this connection, as found by the court, are as follows:

"The court finds that on or about the 1st day of September, 1930, the plaintiffs herein entered into an oral contract with one Miles Bozarth, under the terms of which

the said Miles Bozarth agreed to pay the plaintiffs the sum of one dollar per acre for the use of the said land during the fall of 1930 and for such period of the winter, spring and grazing season of 1931 as he desired to use the same. The court further finds that the streams of fresh water in said pasture became poisoned and polluted for the use of livestock shortly after said contract was entered into by and between the plaintiffs and said Bozarth, and that by reason thereof the said Bozarth declined to use the pasture and pay the plaintiffs therefor."

So far as the facts indicate, plaintiffs were in peaceable and undisputed possession of the 2,480 acres; for a consideration they agreed to let Bozarth occupy and use the pasture. There is no law prohibiting such a contract. If the parties are willing to enter into the same, knowing the existing circumstances. it is enforceable, and disinterested third parties who interfere and wrongfully cause a breach thereof cannot assail the contract by interposing claims or defenses that may be asserted by the parties thereto. Bozarth was willing to perform but for the pollution caused by defendants. This trespass caused the actual damage, for which plaintiffs were entitled to judgment as rendered. We must hold. therefore, that the judgment for actual damages is supported by the facts as found.

Defendants say that the findings of fact will not support the judgment for punitive damages.

Section 9962, O. S. 1931, 23 Okla. St. Ann. sec. 9, deals with this question, and reads as follows:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

We may say here that we are unable to find merit in defendants' contention that only a jury may, under this statute, award exemplary damages; that the court in a tort action where jury is waived is unauthorized so to do. In such case the court in all respects exercises the functions of the jury, and its findings have the force and effect of a jury verdict. Section 20, art. 7, Const. Although we held in Mid-Continent Petroleum Corp. v Bettis, 180 Okla. 193, 69 P.2d 346, that the court in an equity case tried without jury may not render judgment for exemplary damages, we there recognized the power of the court to do so in tort actions where jury is waived.

It is true, as defendants suggest, that the trial court failed to find them guilty of oppression, fraud, or malice, in the commission of the trespass. We have held that one or more of these elements must be shown in tort action before plaintiff may recover punitive damages; that "the act which constitutes the cause of action must be actuated by, or accompanied with, some evil intent, or must be the result of such gross negligence, such disregard of another's rights, as is deemed equivalent to such intent." Keener O. & G. Co. v. Stewart, 172 Okla. 143, 45 P.2d 121.

Plaintiffs say that the findings of the court show that defendants violated the statute (sec. 11580, O. S. 1931, 52 Okla. St. Ann. sec. 296) by allowing salt water to run over the land and pollute the stream (Verland O. & G. Co. v. Walker, supra), and take the position that the act of allowing the pollution constituted "such disregard of another's rights as is deemed equivalent to" an evil intent within the rule stated in Keener O. & G. Co. v. Stewart, above. They say we allowed punitive damages for a like offense in Empire Oil & Refining Co. v. Rawlings, 178 Okla. 391, 62 P 2d 1253. There the evidence, though failing to show actual evil intent, disclosed such gross negligence on the part of defendant and such disregard of plaintiff's rights as to amount to an evil intent. The evidence showed positive overt acts of negligence in that case. In the Keener Oil & Gas Company Case, above, we refused to hold that the mere violation of the foregoing statute, section 11580, was sufficient to warrant judgment for punitive damages, though there was actual damage. No fraud, malice, oppression, or gross negligence is found here by the court. We cannot presume that any such elements existed, and must be governed by the rule applying where none is shown. Without the presence of at least one of such elements, exemplary damages are unauthorized.

Contrary to plaintiffs' contention, the decision of this court on the former appeal of this cause did not become the law of the case on the question of exemplary damages. That question was not there settled (173 Okla. 153, 47 P 2d 124).

The judgment of the trial court is affirmed as to actual damages, and as to punitive damages the same is reversed, and remanded, with directions to enter judgment accordingly.

BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, and HURST, JJ., concur. OSBORN, C. J., and DAVISON, J., absent.