**INVESTORS PREFERRED LIFE INSURANCE COMPANY, a corporation, Appellant,**

**v.**

**Grace D. ABRAHAM, Appellee.**

**No. 8833.**

United States Court of Appeals Tenth Circuit.

March 30, 1967.

Raymond J. Turner, Denver, Colo. (Dawson, Nagel, Sherman & Howard and W. David Pantle, Denver, Colo., with him on brief), for appellant.

Robert D. Looney, Oklahoma City, Okl. (W. J. Otjen, Jr., Enid, Okl., with him on brief), for appellee.

Before PICKETT, LEWIS and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This action was filed in the United States District Court for the Western District of Oklahoma.

Plaintiff, appellee herein,[1] a serviceman's widow, moved to Oklahoma where she intended to establish a home with her minor children, after her bereavement in November, 1962.

Defendant, appellant herein, is an Arkansas Insurance Company[2] which merged with an allied Oklahoma Insurance Company[3] on June 30, 1964.

Upon arrival in Oklahoma the widow was staying with a family of friends until she could find a residence for herself and her children. She planned to place certain insurance benefits, in the amount of $25,000.00, payable because of her husband's death, in the bank for the benefit of her children's future. At this time the allied corporation was conducting a stock promotion campaign among Okla-

1. Will be referred to as widow.

2. Will be referred to as parent company.

3. Will be referred to as allied company.

homa residents to finance the allied corporation. Agents were in the field soliciting buyers and shortly after her arrival they contacted her, soliciting a purchase of a $10,000.00 stock unit, telling her that the maximum sold to one person was a $5,000.00 unit, but because they would like to see her do some good they would sell her a $10,000.00 unit. She advised them that when she received her insurance payments, she could only consider a $200.00 or $300.00 purchase because she wanted the money for her children and she had already talked to a bank about depositing it. The agent invited himself back the following week together with the Executive Vice President[4] of the company who would talk to her.

The malefactor arrived at the appointed time, represented himself as Executive Vice President of the company who had inside information, and guaranteed that the stock would double in value within a year. The widow reiterated what she had told the agent previously regarding her children and the bank. The malefactor beguiled her with his reputation telling her he was a good Christian who did not drink or smoke and that, because she was a widow, he wanted to help her. She agreed to buy $10,000.00 worth of stock and when she received the insurance money, paid for it.

Within thirteen days, the malefactor was back again with another $10,000.00 block of stock in the parent company, appellant herein, which he represented he was selling for an undisclosed principal.[5] Succumbing to additional beguilement and extravagant representations, she purchased a $10,000.00 unit of this stock.

At the time of the transactions, the malefactor was the Executive Vice President of the allied company, the owner of 62,500 shares in the appellant parent company, and had worked as an insurance sales agent for the appellant financed by advances from it.

In April, 1964, the widow needed $2,-000.00 and the allied company repurchased 2000 of her shares at $1.00 per share. On June 30, 1964, the companies merged and the widow contacted the President of the merged corporation and was given the name of brokers handling the stock. The brokers advised her that her remaining $18,000.00 worth of shares were worth $2,000.00. The distraught widow sought legal counsel and this action ensued.

At the conclusion of the evidence, the trial court decided for the widow, giving her $18,000.00 together with interest from the dates she was relieved of her money. Exemplary damages in the amount of $10,000.00 were also awarded.

The decision of the trial court contained in the record conclusively establishes that the conscience of the court was shocked by the fraud perpetrated.

The court found: The malefactor was the agent of the parent company and the allied company, and was acting within the scope of his employment when the fraud was perpetrated; that the parent and allied corporations were interlocking with the same chairman, president, and a great majority of the same officers and stockholders participating in both corporations; a merger occurred wherein the surviving appellant assumed all liabilities and is liable for allied corporation's obligations; that appellant perpetrated the fraud, by misrepresenting to the widow guaranteeing the increased value, all of which she relied upon when she was relieved of her insurance benefits on the specific dates; that $2,000.00 was returned to her on a specific date; that appellant's conduct was gross and willful fraud justifying exemplary damages; that the widow was entitled to judgment with interest from the dates specified.

From the findings it was concluded: Appellant assumed the liabilities of the parent and allied corporation and was

---

4. Hereinafter referred to as malefactor.

5. The appellant proved that this stock was the malefactor's personal stock which he

was selling at $2.00 per share. This factor was unknown to the widow at the time of purchase.

therefore liable; the malefactor was acting as agent, servant and in the course of his employment when the sale occurred; the parent and allied companies were interlocking at the time of the sales and until the merger and are therefore liable; that $10,000.00 punitive damages is reasonable under the circumstances.

Appellant contends they are not liable for the second sale of stock because it was a personal transaction between the malefactor and the widow and that she knew it was the stock of an undisclosed principal.

Appellant further contends that it is not liable for the first sale because the widow knew or should have known the representations were unauthorized and they are not actionable as opinions of the malefactor.

It is further contended the claims are barred by waiver, estoppel and failure to mitigate damages.

Finally, it is contended that the evidence does not sustain the agency relation between malefactor and appellant, therefore, punitive damage should not be allowed, that it is excessive and that the allowance of interest is error.

 It is undeniably established that the widow suffered a fraud which shocked the conscience of the trial court. Both Oklahoma and this circuit have recognized the rule in equity jurisprudence, "that where one of two innocent persons must suffer as the result of an action of a third person, as between the two innocent persons the one who by his conduct and misplaced confidence created the circumstances which enabled the third person to do the wrong, must suffer the loss. [Citations in footnote omitted]." Ryan v. Spaniol, 193 F.2d 551, 553 (10 Cir. 1951); Winchell v. Moffat County State Bank, 307 F.2d 280, 282 (10 Cir. 1962); Rabon v. Putnam, 164 F.2d 80, 83 (10 Cir. 1947); United States v. First Nat'l Bank of Prague, Okl., 124 F.2d 484, 488 (10 Cir. 1941).

Rule 52, F.R.Civ.Proc. provides:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

"It is, of course, well settled that we will not, on appeal, weigh evidence, and that we will not disturb a judgment based upon findings of fact where the evidence was in conflict and the findings are supported by substantial evidence. [Footnote citations omitted]." Peck v. United States, 172 F.2d 336, 337 (10 Cir. 1949).

Surviving corporations are liable for the torts of the merged corporations. Oklahoma recognizes the rule.

"A tort liability of an individual, partnership or corporation is an indebtedness which may be enforced against a corporation which takes over the business and assets of its predecessor under the circumstances outlined above, as the assumption of the liabilities of a predecessor includes tort liabilities [Citations omitted]." Jones v. Eppler, Okl., 266 P.2d 451, 458 (1953).

The trial court found upon conflicting evidence that the malefactor was the agent, servant and within the scope of his employment of both corporations. We believe there was substantial evidence uncontroverted that he was the Executive Vice President of the allied corporation. There was conflicting evidence regarding the misrepresentation. Therefore, under the rule above stated, appellant is liable for the first sale of stock because of the malefactor's misrepresentations.

 The second sale of stock owned by an undisclosed principal must be closely examined. The record discloses the malefactor owned 62,500 shares of stock in the parent corporation; that he was an insurance agent receiving advances from parent corporation for sales of insurance in Oklahoma; that he was sent to Missouri to form a corporation, which he did not accomplish; that he was conversant with the market value of the parent stock at the time of the sale; that he represented the sale was for an undisclosed principal; that the transaction

was accomplished within thirteen days after his first misrepresentation.

The court's conclusion regarding this association prompted it to say, "you turned him loose on the public to do what he did." Therefore, the rule above stated recognized in Oklahoma and this Circuit [Ryan v. Spaniol, 10 Cir., 193 F.2d 551, 553] justified the court in placing the responsibility on the parent company for the malefactor's fraud upon the widow.

■ Considering the charge that the contract and prospectus contained a warning against parol representations, we recognize the general rule:

"The rule that parol representations are not admissible to vary the terms of a written agreement has no application to representations which amount to a fraud practiced in procuring subscriptions to corporate stock." 18 Am. Jur.2d § 327, at 846.

The trier of the facts properly admitted the parol evidence and believed it. We do not find this clearly erroneous.

■ It is contended the representations are not actionable, however, Oklahoma has settled this matter.

"A representation may be regarded as an expression of opinion, but where false and made by one as an inducement to another, who is ignorant thereof, to enter into a contract, and is relied upon to the detriment of the latter, may be made the basis of an action for damages consequent upon fraud and misrepresentations. A statement which by itself might be a mere expression of opinion may be so connected with a material fact as to amount to fraud. [Citations omitted]." Johnson v. Eagle, Okl., 355 P.2d 868, 870 (1960).

■ The brief of the appellant raises the question of waiver, estoppel and failure to mitigate losses. A thorough examination of the transcript of the record fails to disclose that these defenses were pleaded or that they were ever injected as an issue in the trial of the case. This being so, it cannot be raised here for the first time. Chicago & North Western Ry. Co. v. Continental Oil Co., 253 F.2d 468, 473 (10 Cir. 1958).

■ The matter of punitive damages has been settled in Oklahoma by statute and judicial interpretation. Title 23 Okla.Stat.Anno. § 9 [6] was interpreted in Pure Oil Co. v. Quarles, 183 Okl. 418, 82 P.2d 970, 975 (1938), wherein it is said: "* * * we are unable to find merit in defendants' contention that only a jury may, under this statute, award exemplary damages; that the court in a tort action where jury is waived is unauthorized so to do. In such case the court in all respects exercises the functions of the jury, and its findings have the force and effect of a jury verdict. Sec. 20, art. 7, Const., Okl.St.Ann.Const. art. 7, § 20."

Error in granting interest on the amount received as a result of the fraud is predicated upon the apparent conflict between sections 6 and 7, 23 Okl.Stat. Ann. The Oklahoma Supreme Court has resolved this conflict in Deardorf v. Rosenbusch, 201 Okl. 420, 206 P.2d 996, 999 (1949) wherein it refers with approval to the rule:

"The original cases on the subject make a distinction between unliquidated claims, which may be determined by fixed standards, such as current wages for repairing damages to property, the value of materials to replace destroyed property, and the like, and unliquidated claims, which may not be determined entirely by fixed standards, but which must be left to the sound judgment and discretion of the jury, or the court in the absence of the jury. In the former case, interest is allowable, while in the latter it is not. The reason for the rule is that in the latter

6. Title 23 Okl.St.Ann. § 9 Damages, provides: "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

case the person against whom the claim is made cannot ascertain the amount chargeable against him until the same has been judicially determined."

We conclude the trial court properly assessed interest. In view of all the evidence, the rules and equity maximums above stated, we cannot find the trial court clearly in error.

Affirmed.